THE CEMETERY COMPANY *v*. WARREN SCHOOL TOWNSHIP OF MARION COUNTY ET AL.

[No. 29,397. Filed January 7, 1957.]

172

*Alembert W. Brayton* and *William B. Patrick*, both of Indianapolis, for appellant.

*Lafuze, Ging & Graber,* of Indianapolis, for appellee, Warren School Township of Marion County.

*Schortemeier, Eby & Wood,* of Indianapolis, for appellee, Memorial Park Cemetery Association.

ARTERBURN, J.—Appellee, Warren School Township, filed a suit to take by eminent domain proceedings for school purposes the property already dedicated to a public use owned by the Cemetery Company, the appellant. Two main questions are raised by this appellant: (1) the right of a school corporation to take for its public use, property already dedicated to another public use; and (2) the right of the appellant to raise this issue by the filing of objections setting up such facts to the complaint.

The appellee, School Township, claims to have brought its action under the Act of 1907, ch. 87, §1, p. 114, being §28-2501, Burns' 1948 Replacement, which makes no provision for the filing of any objections to the condemnation proceedings. This act, limited to school corporations and bodies, merely provides that upon the filing of a petition for that purpose and after ten (10) days notice to the owners of the land sought to be taken, the court *shall* appoint three appraisers to fix the value of the real estate. Thereafter, any party to the action may except to the report of the appraisers. There is no provision for the filing of any objections prior to the appointment of appraisers, nor for any interlocutory appeal.

The appellant, nevertheless, filed objections to the

petition setting out in substance that the appellant was an incorporated cemetery company exercising the power of eminent domain; that the property sought to be taken had previously been appropriated and dedicated for public cemetery purposes, and is now so used; that the taking by the appellant would completely destroy and is wholly inconsistent with the prior public use for which said land has been dedicated; and that there was other land just as suitable and as available for school use. The objections challenged the power attempted to be exercised by the appellee as well as the necessity of the taking of the particular land by the school corporation.

In the trial court the appellee, School Township, moved to dismiss the objections of appellant. The trial court accepted the appellee's contention that the 1907 statute under which the condemnation proceedings were brought does not provide for any objections to be filed other than those made to the appraiser's report, and accordingly dismissed the objections without permitting the appellant, Cemetery Company, to be heard thereon. After the dismissal of the objections and the appointment of the appraisers by the court, the appellant took an interlocutory appeal to this court under the theory that the general Eminent Domain Act of 1905, ch. 48, p. 59, being §§3-1701—3-1712 Burns' 1946 Replacement, was applicable. The appellee, School Township, thereupon filed its motion to dismiss this appeal, contending that there is no right to such appeal under the Act of 1907, ch. 87, §1, p. 114, being §28-2501 Burns' 1948 Replacement, under which appellee alleges the original proceedings were brought.

The first point we shall consider is the construction and conflict, if any, in the Acts of 1905 and 1907.

The first two sections of the Act of 1907, ch. 87,

§§1-2, p. 114, being §§28-2501—28-2502, read as follows:

"Whenever, in the opinion of the trustees of school corporations of any city or town, or of the township trustee of any township in the state, it shall be considered necessary to purchase any real estate on which to build a schoolhouse, or for any other purpose connected therewith, such township trustee or school trustees, or a majority of them, may file a petition in the circuit court of said county, asking for the appointment of appraisers to appraise and assess the value of said real estate."

"Upon said petition being filed, the owner or owners of said real estate, having had ten [10] days' notice of the pendency thereof, the court shall appoint three [3] freeholders, resident in said school corporation or said township where said real estate is situate, to appraise and assess the value thereof."

Although the special school building condemnation Act of 1907 has no provision therein for making objections to the bringing of the proceedings in the first instance, the general condemnation Act of 1905 does give the right to make objections, and upon the overruling of exceptions and the appointment of appraisers, grants an appeal at that time.

Section 5 of the Act of 1905, being §3-1705 Burns' 1946 Replacement, reads as follows:

"Any defendant may object to such proceedings on the ground that the court has no jurisdiction either of the subject-matter or of the person, or that the plaintiff has no right to exercise the power of eminent domain for the use sought, or for any other reason disclosed in the complaint or set up in such objections. Such objections shall be in writing, separately stated and numbered, and shall be filed not later than the first appearance of such defendant; and no pleadings other than the complaint and such statement or objections shall be allowed in such cause, except the answer provided for in section eight [§3-1707] of this act: Provided, That amendments to pleadings may be made upon leave

of court. If any such objection shall be sustained, the plaintiff may amend his complaint or may appeal to the Supreme or Appellate Court from such decision, as and in the manner that appeals are taken from final judgments in civil actions, of which appeal all the parties shall take notice and by which they shall be bound. But if such objections are overruled, the court or judge shall appoint appraisers as provided for in this act; and from such interlocutory order overruling such objections and appointing appraisers, such defendants, or any of them, may appeal to the Supreme or Appellate Court from such decision as and in the manner that appeals are taken from final judgments in civil actions, upon filing with the clerk of such court a bond, with such penalty as the court or judge shall fix, with sufficient surety, payable to the plaintiff, conditioned for the diligent prosecution of such appeal and for the payment of the judgment and costs which may be affirmed and adjudged against the appellants, such appeal bond shall be filed within ten [10] days after the appointment of such appraisers. All the parties shall take notice of and be bound by such appeal. The transcript shall be filed in the office of the clerk of the Supreme Court within thirty [30] days after the filing of the appeal bond. Such appeal shall not stay proceedings in such cause."

The Act of 1907 does not specifically repeal the Act of 1905 but is deficient in many respects with reference to the procedure to be followed in exercising the authority granted. The notice prepared by the appellee, School Township, summoned the appellant to show cause why the land sought to be appropriated should not be appropriated. In response to this notice the appellant appeared, and filed its objections. The appellee then took the position that the appellant had no right "to show cause why the land should not be taken." The dismissal of the objections by the court prevented the appellant from presenting the facts which it contends would show that the appellee had no right to maintain the suit.

The gist of appellee's contention is that the trial court lacked jurisdiction to consider appellant's objections. The implications of this position would seem to be at variance with the normal concept of due process. If the contention is valid it would mean that the courts are prevented from adjudicating the legal right to take property merely upon the filing of a suit with certain allegations therein, without proof, and without permitting the parties thereto to make objections, questioning the authority to bring the suit. The position of the court would thereby be reduced to a mere administrative tribunal with a mandatory duty of ordering an appropriation and fixing the value of the property taken. The function of adjudicating the legal rights of the parties would be denied the courts. As long as the judiciary remains an effective part of our government it cannot be deprived of its proper role: that of determining the legal rights of the litigants. Likewise, every person is entitled to seek relief from oppressive actions, and that place in a law-abiding society is in the court room. At some place in the proceedings, and by some method the landowner is entitled to contest the legality of the condemnation proceedings, and question the authority under which the attempt is being made to take his property including the issue of whether or not it is a private or public purpose. *Joint County Park Bd.* v. *Stegemoller* (1950), 228 Ind. 103, 88 N. E. 2d 686, 89 N. E. 2d 720; *Foltz, Van Camp Hdw., etc.* v. *City of Indpls. et al.* (1955), 234 Ind. 656, 130 N. E. 2d 650.

The appellee, School Township, contends that the Act of 1907 does not lack due process even though it fails to provide a means or procedure for raising objections questioning the authority of the plaintiff to bring the proceedings in the first instance. Appellee's position is that where acts of this sort fail to contain provisions

for an opportunity to object and be heard, their constitutionality may be upheld on the ground that a suit in equity will permit the landowner to raise the objections, and thus thereby save the constitutionality of the act. We have examined the authorities cited on this point. The authority is to the effect that equity will grant injunctive relief against the wrongful exercise of the power of eminent domain where no provisions are made in the enabling act for a hearing to question the right and authority to maintain the proceeding. This relief ordinarily is negative, however, and enjoins the proceedings as unlawful. It is true, there are some few authorities sustaining the appellee, School Township, in its position. These seem to be the United States Supreme Court and a few states' courts including that of Mississippi. *Louis. & Nash. R. R.* v. *Western Un. Tel. Co.* (1919), 250 U. S. 363, 63 L. Ed. 1032, 39 S. Ct. 513; 18 Am. Jur., Eminent Domain, §322, p. 965; 18 Am. Jur., Eminent Domain, §317, p. 961; 30 C. J. S., Eminent Domain, §394, p. 104; 29 C. J. S., Eminent Domain, §267, p. 1240.

The United States Supreme Court has held, in a Mississippi case *(Louis. & Nash. R. R.* v. *Western Un. Tel. Co., supra)* where the statute failed to give any right to be heard under the eminent domain statute, that the Mississippi court was merely a special administrative court for the sole purpose of determining the value of the land taken and the damages. Such a statute allocating to the judiciary merely an administrative role, and taking from it the primary judicial function of determining the law would make such an act unconstitutional in Indiana.

In the case of *Swinneg* v. *The Ft. Wayne, Muncie and Cincinnati R. R. Co.* (1877), 59 Ind. 205, a statute similar to that of the Act of 1907 provided for the appoint-

ment of appraisers without any specific provision for challenging the regularity of the condemnation proceedings, still this court held that the landowner had the right to question the authority of a railroad company to appropriate his land, and said at page 218 of 59 Indiana, as follows:

> "The provision, that 'the subsequent proceedings on the appeal shall only affect the amount of compensation to be allowed,' must be construed to mean the proceedings subsequent to the establishment of the regularity of the appropriation; otherwise the regularity of the appropriation could not be questioned at all, and such a construction would be incompatible with justice."

The two Acts of 1907 and 1905 should be construed together rather than in a way which would raise a constitutional doubt as to the validity of the Act of 1907 on the ground of lack of due process. An examination of the general eminent domain Act of 1905 reveals that its purpose is to govern and make uniform eminent domain proceedings generally, and it is to be read in connection with the various acts which confer the right of eminent domain upon particular corporations and public bodies. This act does not purport to grant the power of eminent domain, but merely to outline the procedure.

Section 1 of the Act of 1905 (§3-1701 Burns' *supra*) provides:

> "Any person, corporation or other body having the right to exercise the power of eminent domain for any public use, under any statute, existing or hereafter passed, and desiring to exercise such power, shall do so only in the manner provided in this act, except as otherwise provided herein. Before proceeding to condemn, such person, corporation or other body may enter upon any land for the purpose of examining and surveying the property sought to be appropriated or right sought to be acquired; and shall make an effort to pur-

chase for the use intended such lands, right of way easement or other interest therein or other property or right. In case such land or interest therein or property or right is owned by one who is of unsound mind, or an infant, the person, corporation or other body seeking to obtain the land or interest therein for such use may purchase the same of the regularly constituted guardian of such insane person or infant; and if such purchase shall be approved by the court or judge thereof appointing such guardian, and such approval written upon the face of the deed, such conveyance of the premises so purchased, and the deed made and approved by such court or judge, shall be valid and binding upon such insane person or infant. The deed so given, when executed in lieu of condemnation, shall convey only the interest stated in the deed. Wherever land is taken by condemnation proceedings, the entire fee-simple title thereto may be taken and acquired if such land is taken for the site of a station, terminal, power-house, sub-station, roundhouse, yard, car barn, office building or any other purpose except for a right of way."

A subsequent section of this act (§3-1705 Burns' *supra*) provides for the filing of objections to the proceedings, and an interlocutory appeal therefrom.

This court, in construing the Act, has held that it applies to all corporate and municipal bodies exercising the power of eminent domain. *State* v. *Pollitt* (1942), 220 Ind. 593, 45 N. E. 2d 480; *Board of Comrs.* v. *Blue Ribbon Ice Cream, etc. Co.* (1952), 231 Ind. 436, 109 N. E. 2d 88; *Thomas* v. *Lauer* (1949), 227 Ind. 432, 86 N. E. 2d 71.

"The only method of procedure for condemning land that has been provided by our legislature, and which was invoked in this case, is exclusive, and available equally and alike to all bodies having the right to exercise the power of eminent domain. And such body seeking to exercise the right, even though it be the state itself by one of its authorized agencies, of which the appellant is one, is bound by the provisions of the statute." *Board of Comrs.* v.

*Blue Ribbon Ice Cream, etc. Co., supra* (1952), 231 Ind. 436 at page 440.

The Act of 1907 granting school corporations the power of eminent domain does not purport to abrogate or supersede this general Act of 1905. There is no essential conflict between the two acts. They are in *pari materia.* Both can and should be given effect.

It seems to us therefore that the special Act of 1907 and the general Act of 1905 are supplementary each to the other, the one granting the power of eminent domain for school purposes; the other prescribing the procedure in so far as it is lacking in the special Act of 1907. The title of the two acts would compel us towards such reasoning. *City of Indianapolis* v. *Evans* (1940), 216 Ind. 555, 24 N. E. 2d 776.

Nor do we think the later Act of 1949, ch. 187, p. 607, being §§3-1727—3-1728 (1955 Supp.) Burns' 1946 Replacement, in any way repeals the procedure outlined in the Eminent Domain Act of 1905. The Act of 1949 states specifically that it shall be construed to be "supplemental to all existing laws relating to eminent domain proceedings." No conflict exists between the acts. This court has consistently held before and after the Act of 1949 that the general eminent domain statute of 1905 applies alike to all bodies having the right to exercise the power of eminent domain including the state, its administrative agencies and municipal corporations, and all are bound by the provisions of that statute. *Board of Comrs.* v. *Blue Ribbon Ice Cream, etc. Co., supra* (1952), 231 Ind. 436, 109 N. E. 2d 88; *Thomas* v. *Lauer, supra* (1949), 227 Ind. 432, 86 N. E. 2d 71; *State* v. *Pollitt, supra* (1942), 220 Ind. 593, 45 N. E. 2d 480.

The Act of 1905 (§3-1705, Burns', *supra*) authorizes the filing of the objections in this case, and also au-

thorizes an appeal from a dismissal or refusal to consider such objections.

If the appellee, School Township, desired to attack the legal sufficiency of the objections it should have done so by way of a demurrer, thus leaving the appellant the opportunity to amend. As a result of the sustaining of the motion to dismiss, the appellant was given no opportunity to present evidence in support of its objections if they were valid. *State ex rel. Joint Co. Park Bd.* v. *Verbarg* (1950), 228 Ind. 280, 91 N. E. 2d 916; *State ex rel. Terminex Co. of Ind.* v. *Fulton C. C.* (1956), 235 Ind. 218, 132 N. E. 2d 707; *State ex rel. Hurd* v. *Davis* (1949), 227 Ind. 93, 84 N. E. 2d 181.

The foregoing reasoning brings us to the conclusion that the trial court erred in refusing to consider the objections of the appellant. Under the same reasons, the petition to dismiss this appeal has been overruled.

We come now to the consideration of whether or not the dismissal of the objections by the trial court was harmless error or deprived the appellant of its substantial rights. Appellee's two final contentions are: (1) that the statutory power of the school trustee to appropriate real estate is broad enough to entitle the school corporation to condemn land already dedicated to a public use; and (2) that no one can question the decision of the township trustee as to the reasonableness or necessity of the taking. The first question involves the priorities of the power to condemn among various corporate bodies entitled to exercise such powers. It can be stated with finality that the legislature may in granting the power of eminent domain, fix the limitations thereon; the priority of such rights over others; and when one public body exercising such power may override the rights of another.

*Root* v. *State* (1934), 207 Ind. 312, 192 N. E. 447; *Lewis* v. *Bunnell* (1921), 190 Ind. 585, 131 N. E. 386; *Indianapolis, etc. R. Co.* v. *Indianapolis, etc. Transit Co.* (1904), 33 Ind. App. 337, 67 N. E. 1013; *Illyes* v. *White River Light, etc. Co.* (1911), 175 Ind. 118, 93 N. E. 670; *City of Terre Haute et al.* v. *Evansville and Terre Haute R. R. Co.* (1897), 149 Ind. 174, 46 N. E. 77, 37 L. R. A. 189.

The Act of 1907 with which we are concerned here, however, fails to fix any such priorities. The appellee, School Township, argues that there may be inferred from the wording contained in the Act of 1907, the power of the school corporation in this case to take property dedicated to another public use, such as a public cemetery. Our attention is called specifically to the words "any real estate" as used in the Act of 1907 (§28-2501 Burns' *supra*), as meaning the legislature did not intend to impose any restriction on the character of the land to be taken. Statutes of eminent domain being in derogation of the common law rights to property must be strictly construed, both as to the extent of the power and as to the manner of its exercise. *Kinney et al.* v. *Citizens Water, etc. Co.* (1909), 173 Ind. 252, 90 N. E. 129, 26 L. R. A. (N. S.) 195; *Westport Stone Co.* v. *Thomas* (1908), 170 Ind. 91, 83 N. E. 617.

This case should not turn, in our opinion, upon such meager wording in the statute, and as a result infer there was a legislative intent to destroy existing dedications to public use, placing in the hands of the school trustee, unlimited power to take over streets, highways, public buildings, railroad property, and override the rights of other public interests. This would be the logical consequences of appellee's School Township interpretation.

It may be noted at this point that the appellant, Cemetery Company, by the Act of 1953 (§21-301 Burns' 1950 Replacement 1955 Supp.) is given the power to exercise the right of eminent domain which is just as broad and inclusive as the power granted to the school trustee to condemn land for school purposes. The act does not expressly exempt from such condemnation for cemetery purposes, land held for school purposes. If the argument of school township is sound, then there is no defense against the appellant, Cemetery Company, herein, immediately instituting a second condemnation proceeding against the school township to retake the land for cemetery purposes. The logical implication would be that there is no secure or permanent dedication to any public use.

We cannot bring ourselves to believe that a school body trustee or public body may take a court house, public streets, railroad, and like public property for school use merely by reason of the words "any real estate" as used in the enabling Act of 1907. Appellee tempers the logical consequences of its position by conceding that there is a reasonable limitation on such overriding uses, and apparently urges that the courts should determine these limitations and conflicting public interests.

There are cases in other jurisdictions, it is true, where the courts have attempted to adjust and resolve all these conflicting priorities in the use of the power of eminent domain and the use of public property. Such jurisdictions hold that a state or its agency (as distinguished from a private corporation or privately owned utility exercising the power of eminent domain) under a general grant of power may take property already devoted to a public use by a private corporation such as a railroad, cemetery company, or utility. This is done on the theory that the governmental body is

acting for the sovereign which is superior to that of a private company engaging in a public utility or business. *Adirondack Railway* v. *New York State* (1900), 176 U. S. 335, 44 L. Ed. 492, 20 S. Ct. 460; *Burnquist* v. *Cook* (1945), 220 Minn. 48, 19 N. W. 2d 394; *Matter of Grade Crossing Elimination Act (Altamont)* (1931), 234 App. Div. 129, 254 N. Y. Supp. 578; 29 Ind. L. J. 206.

We cannot see any reason for implying an overriding priority on such a theory where the legislature has not spoken in plain language granting such superior power. The public use of land by a private utility for water, light, and communication might appear to many persons to be of as great, if not greater, public concern and interest than that of some other governmental uses which might be asked in the name of the sovereign state.

We are not dealing here with a condition where utter necessity might justify an interpretation which would permit the crossing of highways, railroads, waterways, and lines of communications which would not be inconsistent with, nor restrict or destroy the present public use. On such a question we pass no judgment. We are here considering inconsistent and incompatible uses of the same property. *Indianapolis, etc. R. Co.* v. *Indianapolis, etc. Transit Co., supra* (1904), 33 Ind. App. 337, 67 N. E. 1013; *The City of Fort Wayne* v. *The Lake Shore and Michigan, etc. R'y. Co.* (1892), 132 Ind. 558, 32 N. E. 215, 18 L. R. A. 367; 32 Am. St. Rep. 277; *The City of Valparaiso* v. *The Chicago and Grand Trunk Railway Co.* (1890), 123 Ind. 467, 24 N. E. 249; *Western Union Tel. Co.* v. *Louisville, etc. R. Co.* (1916), 185 Ind. 690, 114 N. E. 406; *Evergreen Cemetery Association* v. *City of New Haven* (1875), 43 Conn. 234, 21 Am. Rep. 643.

To us the determination of the relative values and importance of different public uses, one of which will be inconsistent with or destroy another, is purely a legislative matter—one of policy to be determined in the legislative halls and not in the court room. To assume such a task would embroil the courts in a confusing administrative and legislative function differing but little in character from that of determining what are reasonable rates to be charged by a utility. *The City of Valparaiso* v. *The Chicago and Grand Trunk Railway Co.* (1890), 123 Ind. 467, 24 N. E. 249, *supra; Indianapolis, etc. R. Co.* v. *Indianapolis, etc. Transit Co.* (1904), 33 Ind. App. 337, 67 N. E. 1013, *supra.*

We are not unmindful the Supreme Court of the United States takes a view opposing ours, and is one of those few courts which has not feared to venture into this field of apparent legislative policy. It has attempted to fix priorities in the exercise of the power of eminent domain where the legislative body has not been specific as to the priorities in the various public uses. With a heavy-handed deftness it has reached anomalous and confusing results which should have been anticipated.[1]

The predicament in which the federal courts find themselves is a confirmation that we are right in our convictions that lands appropriated to one public use are not, in the absence of expressed legislative authority, subject to condemnation

---

1. Among other things it has held that the federal authority may take state property for a federal use, but state authorities may not take federal property for state uses even when held for a non-governmental use. *Oklahoma* v. *Atkinson Co.* (1940), 313 U. S. 508, 85 L. Ed. 1487, 61 S. Ct. 1050; *United States* v. *Carmack* (1946), 329 U. S. 230, 91 L. Ed. 209, 67 S. Ct. 252; *Utah Power & Light Co.* v. *United States* (1917), 243 U. S. 389, 61 L. Ed. 791, 37 S. Ct. 387; *State of Minnesota* v. *United States* (8th Cir. 1942), 125 F. 2d 636.

for another and inconsistent public use. *The City of Fort Wayne* v. *The Lake Shore and Michigan, etc. R'y. Co., supra* (1892), 132 Ind. 558, 32 N. E. 215, 18 L. R. A. 367, 32 Am. St. Rep. 277; *City of Terre Haute* v. *Evansville and Terre Haute R. R. Co., supra* (1897), 149 Ind. 174, 46 N. E. 77, 37 L. R. A. 189; *Baltimore, etc. R. Co.* v. *Board, etc.* (1901), 156 Ind. 260, 58 N. E. 837, 59 N. E. 856; *City of Seymour et al.* v. *Jeffersonville, Madison and Indianapolis R. R. Co.* (1891), 126 Ind. 466, 26 N. E. 188.

The appellant's objections also raised the right to question the reasonableness and necessity of the taking of the property for school purposes, alleging therein that there is other vacant property adjacent to the school property, and is suitable for the purpose. The courts have the right to determine the *legal authority and right* under which the power of eminent domain is exercised. This does not mean, however, that the courts may assume the administrative act of determining the *necessity or reasonableness* of the decision to appropriate and take the land. To us, this appears to be a matter for the determination of the legislature or the corporate body to whom the legislature has delegated such a decision. We do not think the court has the power to inquire into the wisdom of propriety of such judgment unless a question of fraud or bad faith is raised as where an attempt is made to show that the property taken will not be used for a public purpose, or the proceeding is a subterfuge to convey the property to a private use. *Farneman et al.* v. *The Mount Pleasant Cemetery Association* (1893), 135 Ind. 344, 35 N. E. 271; *Fountain Park Co.* v. *Hensler* (1927), 199 Ind. 95, 155 N. E. 465, 50 A. L. R. 1518; *Guerettaz* v. *Public Service Co. of Ind.* (1949), 227 Ind. 556, 87 N. E. 2d 721; *Smith* v. *State* (1935), 209 Ind.

80, 198 N. E. 69; *Sexauer* v. *Star Milling Co.* (1910), 173 Ind. 342, 90 N. E. 474, 26 L. R. A. (N. S.) 609; *Logan* v. *Stogsdale* (1890), 123 Ind. 372, 24 N. E. 135, 8 L. R. A. 58; *Willan et al.* v. *Hensley School Tp.* (1911), 175 Ind. 486, 93 N. E. 657; *City of Winchester* v. *Ring* (1924), 312 Ill. 544, 315 Ill. 358, 144 N. E. 333, 36 A. L. R. 520; *Housing Authority* v. *Higginbotham* (1940), 135 Tex. 158, 143 S. W. 2d 79, 130 A. L. R. 1053.

The appellee, School Township, has placed heavy emphasis in its brief on the cases of *Richland School Tp.* v. *Overmyer* (1905), 164 Ind. 382, 73 N. E. 811 and *Braden* v. *McNutt, Trustee* (1888), 114 Ind. 214, 16 N. E. 170, decided under an act prior to and similar to that of 1907. The results in these cases were correct. The only issue before the court on objections filed was that of the *reasonableness* and *necessity* of the taking. The objections were invalid for that reason; however, anything in these cases expressing the view that one whose land is being taken may not file objections questioning the authority and legal right of the plaintiff to exercise the power of eminent domain in a particular case, is *obiter dictum*. To that extent such cases are disapproved.

To summarize, we hold a court may not inquire into the administrative determination of the propriety, reasonableness, or necessity for the taking of property by eminent domain by a proper authority, except for fraud, or where the proceeding is a subterfuge for taking property for private use. On the other hand, the courts have the duty to determine the legal authority and the limits thereof of those persons or bodies attempting to exercise the power of eminent domain. In doing so, however, it may not under the guise of interpreting the law, grant a priority to one public use over another conflicting public use when the legislature

has not seen fit to expressly grant such superior or over-riding power of eminent domain.

This cause is remanded with direction to the trial court to rescind its action appointing appraisers and dismissing appellant's objections, and for further proceeding in conformity with this opinion.

Achor, C. J., Emmert and Landis, JJ., concur.

Bobbitt, J., concurs in result.

NOTE.—Reported in 139 N. E. 2d 538.