**RUDOLPH FARM, INC., Appellant (Defendant Below),**

v.

**GREATER JASPER CONSOLIDATED SCHOOLS, Appellee (Plaintiff Below).**

No. 19A01–8903–CV–00079.

Court of Appeals of Indiana, First District.

May 10, 1989.

John S. Chappell, Chappell & Birk, Jasper, for appellant.

Philip C. Schneider, Schneider Lett Shaneyfelt & Curry, Huntingburg, for appellee.

ROBERTSON, Judge.

In this interlocutory appeal, Rudolph Farm, Inc. challenges a judgment in favor of the Greater Jasper Consolidated Schools in an action brought by the school corporation to appropriate by the power of eminent domain six acres of real estate belonging to Rudolph Farm.

We affirm.

Rudolph Farm's objections to the appropriation, which have been argued in this appeal, can be succinctly summarized as these:

(1) the school corporation does not have an immediate need or fair and reasonable future need, evidenced by a demographic study, for expanding the Ireland elementary school facility to a 500-student capacity;

(2) the school corporation does not need the six acres it seeks to appropriate; and,

(3) the school corporation has not bargained in good faith for the six acres it desires.

Rudolph Farm also maintains in this appeal that the trial court's findings demonstrate the court improperly shifted the burden of proof, requiring it to defeat each of the prerequisites to a condemnation.

I.

The record discloses that the school corporation, motivated by extremely crowded conditions in its elementary schools, safety problems and obsolete facilities, set about to unite its Ireland elementary school facilities on one parcel of land, renovate the building it owns, and expand it to a capacity of about 495 students. At the time of the hearing, enrollment in the school corporation's three elementary schools was rising at a rate of about 40–50 students per year, faster than the school corporation had projected in 1986 when a study of the elementary school program was conducted. Of the 1200 students enrolled at the time of the hearing, approximately 720 of those attend the Tenth Street School, in Jasper, a facility which has become obsolete. With the introduction of the State's prime time program, the Fifth Street School, also in Jasper, had been forced to hold classes on its stage because of overcrowding. In addition to overcrowded conditions at the school in Ireland, the Ireland school facilities are separated by State Highway 56, posing multiple difficulties for administration officials and students. The building on the north side, which is leased by the

school corporation, houses the school's cafeteria and library facilities while the building on the south side of the highway, which is owned by the school corporation, contains the school's gymnasium and restroom facilities. The division necessitates the transportation of children between the two facilities throughout the day. In addition to the inconvenience and cost involved in busing the children back and forth, school officials confront safety problems at the south facility because it does not have an off-street boarding area and is bounded on the west by a heavily-traveled secondary county road.

The proposed renovation and expansion would rectify these problems by adding a bus turnaround and parking facility to the south of the new building. The school corporation's proposed realignment would place all of the Ireland students at the south site and would alleviate overcrowding at the other district schools by equalizing the number of students at each. Bringing more students to the Ireland school would permit the school corporation to hire full time teachers for programs such as art, music and physical education, which for cost effectiveness reasons could not be offered students at Ireland in the past. The new school would also be converted from a septic to a sanitary sewer system.

The new facilities would likely serve the school corporation for about 40–50 years, with the area presently dedicated for recreation available to the east for expansion. The property to be acquired from Rudolph Farm will contain about one-third of the proposed school, parking facilities and the recreational area. Comparatively, the total amount of acreage incorporated into the site plan (12 acres) will be below the average 15–20 acres utilized by other elementary schools throughout the state.

The crux of Rudolph Farm's argument, which is couched in various forms throughout its brief, is that the evidence leads solely to the conclusion that the school corporation does not have an immediate need or a fair and reasonable future need for the six acres it desires to appropriate

because it has not demonstrated, by a demographic study, the demand for a 500–student–capacity school in Ireland. According to Rudolph Farm, without a population study or some other empirical support, the school corporation established at trial nothing other than its desire for improvements. Rudolph Farm acknowledges that the decision to appropriate property is a legislative determination within the school corporation's discretion; nevertheless, it maintains that the school corporation's judgment can be questioned and/or superseded by this court when determining whether or not to condemn the real estate in question.

 To the extent Rudolph Farm is arguing that we may evaluate the school district's need for an appropriation of property or the reasonableness of the school board's decision to alleviate problems at the elementary schools by expanding the Ireland school to a capacity of 500 students, Rudolph Farm's argument is clearly without merit. The Indiana judiciary has long recognized that the authority to determine in any case whether it is necessary or expedient to permit the exercise of the power of eminent domain rests with the legislature. *Richland School Township v. Overmyer* (1904), 164 Ind. 382, 385, 73 N.E. 811, *overruled on other grounds*, 236 Ind. 171, 189, 139 N.E.2d 538; *The Cemetery Co. v. Warren School Township of Marion County* (1957), 236 Ind. 171, 188, 139 N.E. 2d 538; *Wampler v. Trustees of Indiana University* (1961), 241 Ind. 449, 172 N.E.2d 67. Insofar as the legislature may delegate its power to appropriate, it may also competently delegate the authority to decide upon the necessity or expediency of a particular taking, without subjecting the matter to a trial de novo by a court. *Overmyer, supra* 164 Ind. at 386, 73 N.E. 811. The propriety of taking private property for public use is therefore not a judicial question but a legislative one. We are unable to control the exercise of discretion conferred by the legislature nor can we substitute our opinion as to the expediency or necessity of a proposed appropriation for that of the officials designated by statute to so decide. *Overmyer, supra.*

However, the courts do have the duty to inquire into the extent of the school board's authority.[1] *The Cemetery Co., supra* 236 Ind. at 189, 139 N.E.2d 538. Rudolph Farm appears to have adopted the position that the school corporation is acting beyond the scope of its authority by appropriating property which is not presently necessary, relying upon *Country Estates, Inc. v. NIPSCO* (1970), 254 Ind. 108, 258 N.E.2d 54 and *Meyer v. NIPSCO* (1970), 254 Ind. 112, 258 N.E.2d 57. In *Country Estates* and *Meyer,* the Indiana Supreme Court held that NIPSCO had exceeded its statutory authority by appropriating property which it might possibly need in the future but for which it had no immediate plans or need.

We have little difficulty distinguishing the situation in *Country Estates* and *Meyer* from that involved here since it is apparent from a review of the evidence that the school corporation is attempting to appropriate property to accomplish its immediate purposes, not some future, speculative need. The school corporation is faced with overcrowded conditions, safety concerns, transportation problems and obsolete facilities *now.* It cannot provide all of the elementary students in the district with the same types of educational opportunities because its smaller facilities are already over capacity, yet are too small to make additional educational programs cost effective. Although it has not commissioned a demographic study, the school corporation's own statistics show that enrollment is increasing at a district rate of about 40–50 students per year. It is not unreasonable to infer from this trend that enrollment at the Ireland school will continue to rise, creating an actual need for the five additional classrooms presently proposed within the next ten years.

The record shows the school corporation has made a modest proposal precipitated by conditions which presently exist. Unlike the condemning authority in *Country Estates* and *Meyer,* the school corporation is not appropriating property because it might, someday, want to put something there. Contrary to Rudolph Farm's contentions, the evidence does not point solely to the conclusion that the school corporation has exceeded its authority or abused its discretion by appropriating property without a present or fair and reasonable future need.

## II.

Rudolph Farm's second objection is much the same as its first: the school corporation has not demonstrated that it needs six acres rather than the three which would bring it within the minimum requirements set by the State. *See,* 511 IAC 2–2–1(I)(1). In light of our conclusions above that the school corporation has immediate purposes which would be furthered by an appropriation and that it has not exceeded its statutory authority, Rudolph Farm cannot defend against the appropriation by showing a lesser quantity of land than that proposed will suffice or that the school district owns other land which might be converted. The determination of the amount of land necessary to accomplish a particular public purpose is a matter within the discretion of the school board. *See, Jensen v. I & M Electric Co.* (1972), 257 Ind. 599, 277 N.E.2d 589, 602; *State ex rel. Ind. Dept. of Conservation v. Barber* (1964), 246 Ind. 30, 36, 200 N.E.2d 638; *Wampler, supra* 241 Ind. at 454, 172 N.E. 2d 67; *Overmyer, supra* 164 Ind. at 388, 73 N.E. 811.

## III.

Rudolph Farm's final objection to the appropriation is its contention that the school corporation did not negotiate in good faith for the purchase of the property before initiating this action. As evidence of bad faith, Rudolph Farm points to testimony in the record indicating that the school corporation was at one time looking to buy only three acres but immediately before

---

1. IND.CODE 20–4–5–10, 20–5–23–1 and 20–5–2–2 authorize the Greater Jasper Consolidated School corporation to acquire property by eminent domain as it deems necessary for school purposes.

initiating this action changed its offer to show it wanted to purchase six.

The record contains a considerable amount of testimony in support of the trial court's finding that the school corporation fulfilled the requirement of negotiating in good faith before appropriating the property by eminent domain. The record discloses that the school corporation began with a request that Rudolph Farm sell ten acres but in an effort to accommodate Rudolph Farm's interests, changed its proposal several times over the course of the negotiations. At one point, it appears the proposal was to extend the school corporation's holdings directly south from the existing school building but representatives of Rudolph Farm indicated they wanted the property "squared off" so that the remaining property owned by Rudolph Farm would be easier to farm. If the school corporation was to accomplish this goal as well as its goal of incorporating accessible off-street parking and a bus turnaround, it would acquire additional acreage in the process.

The record shows Rudolph Farm offered to sell its acreage to the school corporation for $35,000 per acre but the school corporation's independent appraiser valued the total six-acre parcel at $25,000. The school corporation proposed that Rudolph Farm hire its own appraiser at the school corporation's expense or that each party hire an appraiser and the parties agree to the higher appraised value but Rudolph Farm rejected those proposals as well.

■ The record sustains the trial court's conclusion that the school corporation negotiated in good faith before initiating this action and that the parties could not agree. The record shows the school corporation made both a reasonable offer based upon an independent appraisal and a genuine effort to induce Rudolph Farm to accept it. Nothing more is required. *See, e.g., Wampler, supra; Oxendine v. Public Service Company of Ind., Inc.* (1980), Ind.App., 423 N.E.2d 612.

IV.

Rudolph Farm argues that the trial court's fifth finding—that Rudolph Farm failed to prove facts which would defeat the school corporation's right to exercise the power of eminent domain—demonstrates the trial court improperly placed the burden of proof on Rudolph Farm throughout this proceeding. We refuse to interpret the trial court's finding in this manner.

■ As we indicated earlier, the school corporation is vested with the discretion to determine whether to appropriate property for school purposes and its judgment on this question is not subject to reconsideration by the courts. Since such a determination may be overcome only by a showing that the school corporation exceeded its statutory authority or acted arbitrarily, capriciously, fraudulently, or illegally, it would be proper for the trial court to find that circumstances such as fraud or illegality which would defeat the action had not been shown in opposition by the condemnation defendant. *See, Dahl v. NIPSCO* (1959), 239 Ind. 405, 412, 157 N.E.2d 194. *See also, Derloshon v. City of Fort Wayne* (1968), 250 Ind. 163, 170, 234 N.E.2d 269.

In any event, the trial court specifically found in findings one through four that each of the prerequisites to an appropriation had been demonstrated. The record amply supports these findings. Consequently, the trial court's judgment is sustainable on this basis. *See, First National Bank of Mishawaka v. Penn–Harris–Madison School Corp.* (1970), 255 Ind. 403, 405–406, 265 N.E.2d 16.

Judgment affirmed.

RATLIFF, C.J., and CHEZEM, J., concur.