**Leonard F. DIBLE and Barbara Dible, Appellants–Plaintiffs,**

v.

**The CITY OF LAFAYETTE, Appellee–Defendant.**

No. 79A02–9610–CV–619.

Court of Appeals of Indiana.

April 23, 1997.

Jeffrey S. Dible, Attica, for Appellants–Plaintiffs.

Jerome L. Withered, James R. Schrier, Angela M. Service, Reiling, Teder & Withered, Lafayette, for Appellee–Defendant.

## OPINION

ROBERTSON, Judge.

Leonard F. and Barbara H. Dible [Dible] appeal the adverse summary judgment in their action against the City of Lafayette [City] requesting an injunction prohibiting the City from constructing excessive and unnecessary improvements on their land. Dible raises six issues which we restate and consolidate. The dispositive issue may be restated as follows:

whether genuine issues of material fact exist regarding whether the City violated Dible's due process and property rights by constructing on Dible's land a large storm sewer drain and a sewage lift station that were either entirely unnecessary or much larger than necessary to serve any legitimate public purpose.

We reverse.

## FACTS

The facts in the light most favorable to the nonmovant Dible reveal that, in 1971, the Dibles purchased a lot in a subdivision and built their home upon it. One end of Dible's property was crossed by a steeply banked, wooded, natural ravine through which water naturally coursed. The subdivision, including Dible's property, is subject to a restrictive covenant, which touches, concerns and runs with the land, which reads as follows:

The drainage ways and ravines on the lots in the subdivision, as they exist at the time they are sold to the first purchaser, shall be maintained and shall not be filled or altered in any way unless the building committee ... shall first consent in writing to such filling or alteration. In the event of violation of this restriction said committee shall have the right to have the affected drainage way or ravines cleaned or otherwise restored and shall have the right to collect the costs thereof and interest and attorneys' fees from the owner or owners of the lot or lots where the violation occurred.

The City holds utility and drainage easements on Dible's property, including part of the ravine. The original sewage lift station serving the subdivision had been placed on the City's easement on one bank of the ravine, partly on Dible's property. By 1992, this sewage lift station had exceeded its expected life and needed to be replaced.

In 1992, the City's Board of Public Works and Safety began two construction projects which would affect Dible's property. One was the installation of new storm sewer drains and the other was the replacement of the sewage lift station. The two projects were financed through different sources. As discussed below, the City essentially relinquished all responsibility and control over the projects to a private contractor, Hawkins Environmental, Inc., who designed the improvements and managed the construction projects. The City would appear not to dispute that this arrangement violated Ind.Code 5–16–10–2(a) which provides:

A unit of local government may not employ the architect or engineer who provided design services on a public construction project or his affiliate, to be the construction manager on the project he designed.

The engineering plans drawn up by Hawkins and presented at the public hearings were not comprehensive, and, initially, did not disclose that a new sewage lift station was to be installed on Dible's property. Dible, a retired industrial engineer, began communicating in writing with Hawkins and City personnel in an effort to obtain information regarding the design and scope of the project

or projects. Dible pointed out that the sewer drain that was to placed in the ravine on his property was entirely unnecessary because, as a part of the same project, the City was installing a larger storm drain elsewhere which would intercept approximately 95% of the water that would otherwise have coursed through the ravine. Dible also questioned Hawkins and City personnel why the plans called for the ravine to be recontoured and filled in with approximately 200 truckloads of dirt. No one informed Dible that a new sewage lift station was to be installed. However, it became obvious later that the purpose of recontouring and filling in the ravine, as depicted in the engineering plans, was to prepare the site for the installation of the new sewage lift station.

On March 29 and 30, 1993, the City, acting through Hawkins, excavated a massive swath through the ravine on Dible's property, removing much of the ravine's natural banks and cutting down or destroying 17 large trees. The City undertook this action without obtaining the necessary construction or building permits, and despite Dible's written and oral objections to City and Hawkins personnel. On March 30 or 31 of 1993, Dible held a meeting on his property with the County Surveyor, a County Commissioner, and Hawkins personnel. Dible explained about the restrictive covenant which prohibited filling in or altering the ravine. All involved orally agreed that construction would stop pending the meeting of the County Drainage Board scheduled for April 7, 1993, at which Dible would be permitted to raise his objections. Nevertheless, on April 6, 1993, in violation of this agreement, the City installed 105 feet of concrete storm sewer drain in the bottom of the ravine. The drain was covered by a large amount of fill dirt in preparation for building the pad for the new lift station. Incidentally, the City had not yet obtained the permits required to build the new lift station.

Dible voiced his objections at the Drainage Board meeting held on April 7, 1993. The Drainage Board attorney stated that project did not comply with the drainage ordinance, nor had the City been authorized to begin the construction without the consent of the Drainage Board.

Approximately five days later, on April 12, 1993, the City obtained a building permit for the sewage lift station. The engineering plans on file since 1992 depicted only a "building pad." Dible wished to stay informed about the process and expected to eventually see engineering plans for the proposed lift station. In order to keep himself informed, Dible placed many calls to the Indiana Department of Environmental Management [IDEM] from which the City would be required to obtain a sewer permit.

Dible was out of the state the last ten days of March and the first part of April, 1994. While he was gone, the City published notice in the local newspaper that it would hold a public meeting on April 5, 1994, to receive comments and to advise the public about the water main and sewage collection system projects. Dible had no actual notice of the scheduled meeting. The official minutes of the meeting held at City Hall show that the only persons present were Hawkins personnel, and read:

> The meeting started at 10:30 a.m. and adjourned at 10:45 a.m. due to no potentially affected parties in attendance. No written or oral comments were submitted.

When Dible returned from his trip out of state, he promptly called IDEM and learned that the City, through Hawkins, had filed the anticipated plans for the sewage lift station in its application for the permit from IDEM. The IDEM permit application forms required the City to:

> [f]ully identify all persons, by names and address, who may be potentially affected by the issuance of this permit, such as adjoining landowners, persons with a proprietary interest, and/or persons who have complained or submitted comments about your proposed facility. Failure to fully identify a potentially affected person may result in any issued permit being challenged and rendered null and void.

The purpose of this requirement, as outlined in a certified letter sent from IDEM to the City, was to provide aggrieved persons a fifteen day period to request an adjudicatory hearing as provided by statute. Despite the

well-documented history of Dible's objections and concerns regarding the scope of the projects to be constructed on his property, the City did not list or otherwise identify him as required in its application. The application also did not inform IDEM that the property was subject to restrictive covenants governing water drainage.

In April of 1994, Dible continued to write letters to the City and Hawkins personnel objecting to the excessive amount of fill dirt which was to be placed in the ravine for the construction of the new lift station. Dible has never objected to the installation of a new lift station but has only protested the proposed size as excessive and unnecessary and, therefore as constituting an unnecessary and excessive burden on his property.

On June 27, 1994, Hawkins began excavation on the new lift station. On June 29, 1994, Dible filed the present lawsuit alleging that the construction exceeded the City's easement, violated restrictive covenants, and constituted an unlawful taking of Dible's property. Dible requested that the trial court issue an injunction prohibiting any additional construction. The trial court set the preliminary injunction hearing for July 12, 1994. However, the City obtained a continuance, and the hearing was reset, by agreement, for August 2, 1994. The City took the position that it would not, and could not, consent to any delay in the project because such would require notice to the holders of the bonds used to finance the project. Thus, the City continued with the construction on Dible's property. However, the City later admitted that the situation with the bonds had not presented a problem because the sewage lift station project had been financed through a different source, which had not been subject to such constraints. At every step of the way, Dible warned the City that if he were ultimately successful in the present litigation, the City could be required to remove the improvements from his property.

On July 25, 1994, the City filed a motion for a change of venue from the judge which again served to delay the proceedings. The special judge who presided over this case qualified and assumed jurisdiction on August 9, 1994. A pretrial conference was scheduled for October 19, 1994, and the hearing on the petition for the preliminary injunction was reset for October 28, 1994. However, at the pretrial conference, the hearing was again continued.

The construction of the sewage lift station was completed in January of 1995.[1] The new lift station is surrounded by a fenced-in, gated, asphalt pad. Teenagers now regularly use the lift station structure as cover to facilitate trespassing onto Dible's land to congregate and smoke cigarettes.

As the completion of the project rendered any preliminary relief that the trial court might have afforded superfluous, Dible amended his complaint to request mandatory injunctive relief requesting an order that the City remove the improvements constructed which served no public purpose. The City obtained two more continuances of the trial date, ultimately to November 20, 1995. On that date, however, the trial court, on its own motion, continued the case again.

In December of 1995, the City filed the instant motion for summary judgment. In resistance to the motion, Dible submitted the affidavit of his expert who had inspected the new lift station, reviewed Hawkins' engineer-

1. Indiana Trial Rule 65(A)(3) which governs preliminary injunctions provides:

Assignment of cases—Judge to act promptly. Assignment of cases shall not be affected by the fact that a temporary restraining order or preliminary injunction is sought, but such case shall be assigned promptly and the judge regularly assigned to the case shall act upon and hear all matters relating to temporary restraining orders and preliminary injunctions. The judge shall make himself readily available to consider temporary restraining orders, conduct hearings, fix the manner of giving notice and the time and place for hearings under this rule, and shall act and require the parties to act promptly.

It would appear that this rule was disregarded in the present case. Moreover, while the record does not disclose the basis upon which change of venue from the judge and most of the continuances were sought, we note that T.R. 11 prohibits the use of pleadings for the sole purpose of delaying proceedings. *See also* Ind.Professional Conduct Rule 3.2 (Attorneys must not interpose delay for the purpose of frustrating an opposing party's attempt to obtain rightful redress or repose).

ing drawings, studied pump equipment technical specifications, and viewed videotape and photographs of the construction. The expert submitted a 17 page affidavit regarding aspects of the lift station's design and construction which were "wasteful and of no operational purpose or benefit to the public" costing the public considerable, unnecessary expense. For example, had the City not constructed the excessively large lift station, it would not have needed to install the new storm sewer drain in the ravine as the larger drain installed as a part of the same project would have intercepted nearly all of the water that otherwise would have coursed through the ravine. Also, the concrete enclosures of the lift station were seven feet higher than necessary, requiring a corresponding amount of fill dirt to be placed in the ravine; over 50% of the station remains empty and is not necessary for holding or pumping sewage. Dible's expert opined further that an appropriately sized new lift station could have been installed without altering or filling in the ravine, and that the fenced-in, asphalted area was approximately three times larger than necessary. In short, Dible's expert opined that the City could have saved the public considerable expense and, at the same time, observed the restrictive covenants prohibiting the filling in or alteration of the ravine on Dible's property.

After a hearing on the motions, the trial court granted the City's motion finding, in pertinent part, as follows:

There is no question that there is a valid public purpose for the lift station in this case; that the project was properly authorized by the Lafayette Board of Public Works; and that the necessary approvals and permits were obtained from the [Drainage Board] and [IDEM]. The sewage lift station and drainage appurtenances were designed and constructed under the direction and authority of the Lafayette City Board of Public Works.

The public purpose of this project having been established, the Court may not substitute its judgment for that of the City

and its agents in regard to the design, engineering, size or scope of the project. Injunctive relief to force the City to change the design, engineering, size or scope of the project is not appropriate.[2]

This appeal ensued.

## DECISION

As stated in *Stevenson v. Hamilton Mutual Insurance Company,* 672 N.E.2d 467 (Ind. Ct.App.1996), *trans. pending:*

In reviewing a motion for summary judgment, this court applies the same standard as the trial court. We must determine whether there is a genuine issue of material fact and whether the law has been correctly applied by the trial court. Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Neither the trial court, nor the reviewing court, may look beyond the evidence specifically designated to the trial court. Once the movant for summary judgment has established that no genuine issue of material fact exists by submission of materials contemplated by T.R. 56, the nonmovant may not rest on his pleadings but must set forth specific facts, using supporting materials contemplated under the rule, which show the existence of a genuine issue for trial. A trial court's grant of summary judgment is "clothed with a presumption of validity," and the appellant bears the burden of demonstrating that the trial court erred.

672 N.E.2d at 470–71 (Citations omitted). As stated in *Nelson v. Jimison,* 634 N.E.2d 509 (Ind.Ct.App.1994:

Summary judgment must be denied if the resolution hinges upon state of mind, credibility of the witnesses, or the weight of the testimony. Mere improbability of recovery at trial does not justify the entry of summary judgment against the plaintiff. On a motion for summary judgment, the evidence must be construed in favor of the nonmovant, and any doubt about the exis-

---

**2.** Trial court findings in summary judgment proceedings merely afford the reviewing court a statement of reasons for the trial court's actions

and serve no other purpose. *Dague v. Fort Wayne Newspapers, Inc.,* 647 N.E.2d 1138, 1140 (Ind.Ct.App.1995), *trans. denied.*

tence of a genuine issue of material fact must be resolved against the moving party. *Id.* at 512 (Citations omitted).

■■■ As eloquently stated by our supreme court:

> [N]o court of justice in this country would be warranted in assuming that the power to violate and disregard [the rights of personal liberty and private property]—a power so repugnant to the common principles of justice and civil liberty—lurked under any general grant of legislative authority, or ought to be implied from any general expressions of the will of the people.

*McKinster v. Sager,* 163 Ind. 671, 72 N.E. 854, 856 (1904). The Constitutional guarantee of due process of law is intended to prevent the State from exercising, by way of any of its departments, arbitrary and capricious power over its citizens or their property. *Id.* at 858. The essential principle of due process is that deprivation of life, liberty, or property be preceded by notice and an opportunity for a hearing appropriate to the nature of the case. *Howard v. Incorporated Town of North Judson,* 661 N.E.2d 549, 553 (Ind.1996). If State action is involved and a property interest is at stake, then the opportunity to be heard must be granted at a meaningful time and in a meaningful manner. *City of Mitchell v. Graves,* 612 N.E.2d 149, 152 (Ind.Ct.App.1993). The State must, at a minimum, provide such notice as is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Yoder v. Elkhart County Auditor,* 632 N.E.2d 369, 372 (Ind. Ct.App.1994), *trans. denied, cert. denied,* 513 U.S. 1082, 115 S.Ct. 733, 130 L.Ed.2d 636. In determining whether constitutional requirements of due process have been met, courts should take cognizance of the practicalities and peculiarities of each particular case. *City of Mitchell,* 612 N.E.2d at 152. Whether due process has been satisfied depends upon the balancing of 1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used; 3) the probable value, if any, of addi-

tional or substitute safeguards; and 4) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural safeguard would entail. *Starzenski v. City of Elkhart,* 659 N.E.2d 1132, 1138–39 (Ind.Ct.App.1996) (Test taken from *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)), *trans. denied, cert. denied,* —— U.S. ——, 117 S.Ct. 582, 136 L.Ed.2d 512). In any event, if the governmental entity provides procedures to protect a right deserving of due process protection, then it must follow those procedures. *City of Mitchell,* 612 N.E.2d at 152. While proceedings before administrative bodies are not required to be conducted with all the procedural safeguards afforded by judicial proceedings, there are standards below which a municipal board of public works cannot go. *Id.* Both trial and appellate courts have the duty to see that fundamental rights of due process are not improperly denied in any type of action. *Id.*

■■■ All easements are limited to the purpose for which they are created, and their enjoyment cannot be extended by implication. *Brown v. Heidersbach,* 172 Ind.App. 434, 360 N.E.2d 614, 618 (1977). The servient estate is burdened only to the extent necessary to accomplish the end for which the easement was created and may not be subjected to greater burdens by the holder of the easement. *Id.*

■■■ The Due Process Clause of the Fourteenth Amendment to the United States Constitution and Art. 1 § 21 of the Indiana Constitution prohibit the taking of private property for a private use. *Fountain Park Co. v. Hensler,* 199 Ind. 95, 155 N.E. 465, 469 (1927). A taking by eminent domain or inverse condemnation includes any substantial interference with private property which destroys or impairs one's free use, enjoyment, or interest in the property. *Board of Commissioners of Vanderburgh County v. Joeckel,* 407 N.E.2d 274, 278 (Ind.Ct.App.1980). If the property is taken for other than a public purpose, it is of no consequence that ample provision is made for the payment of just compensation to the owner because the taking constitutes an unconstitutional violation

of private property rights. *Pulos v. James,* 261 Ind. 279, 302 N.E.2d 768, 774 (1973). A landowner's right to enforce a restrictive covenant is a property right which may only be taken by the State for a public purpose and with provision for just compensation. *Id.* A property owner must be afforded some opportunity to contest the legality of a municipality to take his property, including the issue of whether the taking promotes a public or a private use. *Cemetery Company v. Warren School Township of Marion County,* 236 Ind. 171, 139 N.E.2d 538, 541 (1957).

▪ The determination of whether a particular use of property is public or private use and, thus, whether a governmental entity may properly take the property by eminent domain, is a question for the judiciary. *Westport Stone Company v. Thomas,* 175 Ind. 319, 94 N.E. 406, 408 (1911); *Cincinnati v. Vester,* 281 U.S. 439, 446, 50 S.Ct. 360, 362, 74 L.Ed. 950 (1930). The courts have the duty and authority to determine whether the governmental entity has exceeded its authority or abused its discretion by appropriating property without a present or fair and reasonable future need. *Rudolph Farm Inc. v. Greater Jasper Consolidated Schools,* 537 N.E.2d 1199, 1202 (Ind.Ct.App.1989). The courts will afford relief upon a showing that the governmental entity has exceeded its constitutional or statutory authority or acted arbitrarily, capriciously, fraudulently, or illegally in exercising the power of eminent domain. *Id.* at 1203; *Cemetery Co.,* 139 N.E.2d at 546 (The court will intervene upon a showing of fraud or bad faith as where an attempt is made to take property for other than a public purpose); *Cincinnati v. Vester,* 281 U.S. at 447–48, 50 S.Ct. at 363 (Municipality does not have sweeping authority to take excess property through condemnation unrelated to the immediate improvement); *City of Troy v. Barnard,* 183 Mich.App. 565, 455 N.W.2d 378, 382 (1990) (Municipality could not take excess property to construct a five foot sidewalk where the public necessity for the excess condemnation was remote or speculative); *Lincoln/Lewis & Clark Sewer District v. Bossing,* 215 Mont. 235, 696 P.2d 989, 992 (1985) (Municipality failed to prove a reasonable present or reasonably foreseeable future need to connect landowners to sewer system to justify taking their property); *Village of Blue Ash v. City of Cincinnati,* 173 Ohio St. 345, 182 N.E.2d 557, 563 (1962) (Courts possess full authority to determine the proper limits of, and to prevent abuses in, the exercise of a municipality's power of eminent domain; and the court's power to enjoin an unconstitutional exercise of that power is a matter of strict right, not one of equitable discretion).

### Exhaustion of Remedies— Primary Jurisdiction

▪ The City argues that Dible's lawsuit was properly terminated because he had not exhausted his administrative remedies by contesting the issuance of the sewer permit by IDEM under the Administrative Orders and Procedures Act, Ind.Code 4–21.5–1–1 et seq. Under the doctrine of "primary jurisdiction," if all of the issues or claims are clearly matters for exclusive administrative or regulatory agency determination, the court is without subject matter jurisdiction and must dismiss the complaint. *Town Board of Orland v. Greenfield Mills,* 663 N.E.2d 523, 525 (Ind.1996). However, where at least one of the issues or claims is within the jurisdiction of the trial court, the entire case falls within its jurisdiction. *Id.*

In the present case, the central issue is whether the City exceeded it authority or abused its discretion by appropriating Dible's property without a present or fair and reasonable future need. As noted above, this is a question reserved for the judiciary. *See Westport Stone Company,* 94 N.E. at 408; *Rudolph Farm,* 537 N.E.2d at 1202. Accordingly, the entire case falls within the trial court's jurisdiction.

### Conclusion—Appropriate Remedy

▪ In the present case, the properly designated evidence in the light most favorable to the nonmovant Dible supports the following: 1) the City's delegation of the responsibilities of both planning and managing the public works projects to the same private contractor, Hawkins Environmental, Inc., was unlawful as violative of I.C. 5–16–10–2(a); 2) this statute was designed to prevent the wasteful use of public resources in

building unnecessary or excessive improvements (as alleged and supported by evidence in this case); 3) the improvements constructed on Dible's land were either unnecessary or excessive with respect to serving any legitimate public purpose; 4) the City exceeded its rights under its easements and engaged in an unconstitutional taking of Dible's land by violating the restrictive covenant; 5) Dible's due process rights were violated because he had never been afforded a meaningful opportunity to contest the legality of the taking; 6) a public at large has suffered injury due to being subjected to the expenses associated with the unnecessary and excessive improvements. Accordingly, we must reverse the entry of summary judgment and remand with instructions that Dible's lawsuit proceed as a public lawsuit under Ind.Code 34–4–17–1(b) which governs:

> any action whereby the validity, location, wisdom, feasibility, extent or character of construction, financing or leasing of any public improvement by any municipal corporation is questioned directly or indirectly, including but not limited to suits for declaratory judgments or injunctions to declare invalid or to enjoin such construction, financing or leasing, ... [3]

■ A mandatory injunction is an appropriate remedy to rectify the violation of a restrictive covenant. *Highland v. Williams*, ·166 Ind.App. 492, 336 N.E.2d 846, 847 (1975). In *Highland*, we held that where a person installed a structure with actual knowledge that it was in violation of restrictive cove-

nants, the trial court's mandatory injunction ordering its removal was not excessive. Should Dible prevail in demonstrating that the City unconstitutionally took Dible's property without a fair and reasonable public purpose, the trial court could appropriately order the City to remove the unnecessary improvements. However, should Dible establish a *public* taking within the City's constitutional authority, Dible should be awarded just compensation. *See Town Board of Orland*, 663 N.E.2d at 528 fn. 7 (As a general rule, equitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the sovereign after the taking). Should the City prevail in demonstrating the public necessity of the improvements and that it did not abuse its rights under its easements on Dible's land, judgment should be entered for the City.

Judgment reversed.

NAJAM and BAKER, JJ., concur.

---

3. All public lawsuits must be brought in conformity with the act which requires that the plaintiff 1) have the proper legal status, 2) the proper type of lawsuit; 3) have exhausted his administrative remedies, including the filing of a remonstrance when available; and 4) have raised a proper objection at a public hearing; I.C. 34–4–17–2, –8(b) & (c); *Cristiani v. Clark County, Indiana Solid Waste Management District*, 675 N.E.2d 715, 719–21 (Ind.Ct.App.1996). That Dible has established the first, second, and fourth requirements listed above cannot be seriously disputed. However, as noted above, the City has asserted that Dibble has failed to exhaust his administrative remedies by failing to appeal the issuance of the sewer permit from IDEM. Exhaustion of administrative remedies is not required when futile as where the party's claim is beyond the pale of the agency's competency, expertise, and authority. *Rambo v. Cohen*, 587 N.E.2d 140, 144 (Ind.Ct.App.1992), *trans. denied; Smith v. Indianapolis Public Schools*, 916 F.Supp. 872, 877 (S.D.Ind.1995). Dible's request for mandatory injunctive relief to remedy the alleged violations of his property rights and his rights of due process fall beyond the pale of IDEM's competency, expertise, and authority in issuing sewer permits. Moreover, the City cannot seek to be exonerated as the result of Dible's alleged failure to adhere to IDEM's procedures where such failure is attributable to the City's flagrant abuse of those procedures as established by undisputed evidence and outlined above. *See Standard Oil Company v. Federal Trade Commission*, 475 F.Supp. 1261, 1267 (N.D.Ind.1979) (Exhaustion of administrative remedies will not be required where the governmental entity involved has violated the petitioner's rights by disregarding specific and unambiguous statutory, regulatory, or constitutional directives).