MATLOCK ET AL. v. BLOOMINGTON WATER COMPANY.

[No. 24,697.  Filed March 19, 1925.  Rehearing denied June 10,
1925.]

1. EMINENT DOMAIN.—*Change of venue statute not applicable
to preliminary proceedings in eminent domain.*—The statute
creating the right of eminent domain and regulating the pro-
cedure (§§7680-7688 Burns 1926, §§929-937 Burns 1914, Acts
1905 p. 59, §§1-4), contemplates a summary proceeding until
the question of damages is reached and the statute as to change
of venue from the county is not applicable.  p. 275.

2. EMINENT DOMAIN.—*Evidence held to warrant finding that
water company had right to exercise power of eminent domain.*
—Evidence warranting inference that a water company had
the franchise right and was charged with the public duty to
supply water to a certain city and its inhabitants, that it had
a franchise from the county to lay its mains, conduits and
pipes over, across and along the highways thereof, that it had
a contract with the city under which it would be bound to
perform that duty, and that it was actively proceeding with
plans and arrangements to construct a plant for that purpose,
*held* sufficient to warrant finding that it was entitled to exer-
cise the power of eminent domain to secure lands enabling
it to impound water for that purpose and to construct its
waterworks.  p. 278.

3. EMINENT DOMAIN.—*Water company may exercise power of
eminent domain though its plant is not yet built and in opera-
tion.*—The fact that a water company's plant was not yet built
and in operation would not prevent its exercise of the power
of eminent domain to secure lands on which to construct its
waterworks.  p. 278.

4. EMINENT DOMAIN.—*That water company would probably sell
its water to a city with a municipal water plant or lease its
plant to city does not preclude its exercise of power of emi-
nent domain.*—The fact that a water company attempting to
exercise the power of eminent domain would probably furnish
water to the inhabitants of a city by selling the water to the
city for distribution through the mains and pipes of its mu-
nicipal water plant, or by leasing its waterworks to the city
for use in connection with such plant, would not preclude its
exercise of the power of eminent domain as a public utility.
p. 279.

5. EMINENT DOMAIN.—*Trial court's decision that petitioner was
entitled to exercise power of eminent domain will not be re-
versed when supported by evidence.*—Trial court's decision that

a petitioner was entitled to exercise the power of eminent domain will not be reversed on appeal merely because there was evidence tending to show that it intended to devote the property appropriated to private use, where there was evidence supporting the decision.  p. 279.

6. EMINENT DOMAIN.—*Facts stated that would warrant inference that incorporated water company desired to appropriate land for public use.*—The facts that a water company had incorporated to own, construct, operate and maintain a plant and system for the purpose of supplying a city and the inhabitants thereof with water, that it had obtained from the county the right to dam a creek and construct a reservoir, and to lay its mains in certain highways, and had entered into a contract with the city to furnish it water for twenty-five years, warranted an inference that the proposed taking of property would be for a public use.  p. 280.

7. EMINENT DOMAIN.—*Furnishing water to a city with which to extinguish fires and flush streets and sewers is a public purpose.*—Furnishing water to a city with which to extinguish fires, flush streets and sewers, and accomplish other municipal functions, is a public purpose.  p. 280.

8. EMINENT DOMAIN.—*Water company's obligation to furnish water to city and its inhabitants no less binding by reason of contract with city to use its plant to distribute water to consumers and not to compete with city plant as to domestic supply.*—The public duty and obligation of a water company that has contracted to furnish a city and its inhabitants with water for a period of twenty-five years and has been granted a franchise to lay its mains in certain streets of said city would not be less binding by reason of a contract with the city whereby it was to furnish water to consumers indirectly through pipes owned by the city and had agreed not to make domestic connections directly with its own mains, nor to use its lines in competition with the city plant.  p. 280.

From Monroe Circuit Court; *Hubert A. Rundell,* Judge.

Eminent domain proceeding by the Bloomington Water Company to appropriate land of Charles Matlock and others. From an order appointing appraisers, the defendants appeal. *Affirmed.*

*S. C. Kivett,* for appellants.

*J. F. Regester* and *Miers & Corr,* for appellee.

EWBANK, J.—Appellee brought an action to appropriate certain lands for the alleged purpose of building thereon a dam, a basin in which to impound water, a power plant, and certain pipe lines and water mains, and obtaining therefrom materials for the construction of its purposed waterworks.    Appellants filed twelve objections, some of which were subdivided.    Appellee filed a motion to strike out each of these objections, and appellants filed a motion for a change of venue from the county, but it was overruled, and they excepted.    The trial court sustained the motion to strike out six of the objections, and appellants excepted.    Evidence was then heard, after which the court overruled the other six objections, and made a finding that plaintiff was entitled to appropriate the lands in question, and entered an interlocutory order appointing appraisers to assess the value of such lands and the damages to appellant's remaining lands by reason of such appropriation, when appellants again excepted, and perfected an appeal from that order.

Overruling the motion for a change of venue from the county is first assigned as error.    The statute under which this proceeding was begun and prosecuted consists of twelve sections, of which the first four relate to a preliminary attempt that must be made to purchase the property, to the facts that must be stated in the petition, and to the notice to be given and how it shall be served, and provide that the court or judge in vacation shall take action thereon, "being satisfied of the regularity of the proceedings, and the right of the plaintiff to exercise the power of eminent domain for the use sought."    §§7680-7683 Burns 1926, §§929-932 Burns 1914,    §§1-4, Acts 1905 p. 59.    The next section reads as follows (our italics) :    "Any defendant may object to such proceedings on the ground that the court

has no jurisdiction of the subject matter or of the person, or that the plaintiff has no right to exercise the power of eminent domain, for the use sought, or for any reason disclosed in the complaint or set up in such objections. *Such objections* shall be in writing, separately stated and numbered, and *shall be filed not later than the first appearance of such defendant; and no pleadings other than the complaint and such statement of objections* shall be allowed in such cause *except the answer provided for in section 8* of this act: Provided, That amendments to pleadings may be made upon leave of court. *If any such objection shall be sustained,* the plaintiff *may amend his complaint or may appeal* to the supreme or appellate court from such decision, as and in the manner that appeals are taken from final judgments in civil actions, of which appeal all the parties shall take notice and by which they shall be bound. But *if such objections are overruled the court, or judge, shall* appoint appraisers as provided for in this act; and *from such interlocutory order* overruling such objections and appointing appraisers such defendant or any of them, *may appeal to the supreme or appellate* court from such decisions as and in the manner that appeals are taken from final judgment in civil actions, upon filing with the clerk of such court a bond with such penalty as the court, or judge, shall fix, with sufficient surety, payable to the plaintiff, conditioned for the diligent prosecution of such appeal and for the payment of the judgment and costs which may be affirmed and adjudged against the appellants. Such *appeal bond shall be filed within ten days* after the appointment of such appraisers. All the parties shall take notice of and be bound by such appeal. *The transcript shall be filed* in the office of the clerk of the supreme court *within 30 days* after the filing of the appeal bond. *Such*

*appeal shall not stay proceedings in such cause."*
§7684 Burns 1926, §933 Burns 1914, §5, Acts 1905 p. 59.

Other sections of the act provide for the assessment of benefits and damages by the appraisers, give the plaintiff a right to take possession on payment of the damages so assessed, provide for taking exceptions to the assessment made by the appraisers, and provide for a forfeiture of the rights acquired by proceedings under the statute in case the damages as finally determined shall not be paid and the land taken possession of and devoted to the purpose for which it was appropriated within a limited time, as thereby fixed.   Section 8 provides that "any party to such action aggrieved by the assessment of benefits or damages may file written exceptions thereto * * * within 10 days after the filing of such report, and the cause shall further proceed to issue, trial and judgment as in civil actions; the court may make such further orders, and render such findings and judgments as may seem just.   Such judgment as to benefits or damages shall be appealable by either party as in civil actions to the appellate or supreme court."   §7686 Burns 1926, §936 Burns 1914, Acts 1905 p. 59.

These provisions of the statute obviously contemplate a summary proceeding, in which a jury can take no part and the territorial location of the court can make no possible difference, until the point is reached of trying the question of damages.   Upon this question, "the cause shall proceed to issue, trial and judgment as in civil actions," and a change of venue from the county and a trial by a jury of the county to which the cause is transferred may be had.   *Clinton Coal Co.* v. *Chicago, etc., R. Co.* (1921), 190 Ind. 465, 469, 130 N. E. 798; *Chicago, etc., R. Co.* v. *Wysor Land Co.* (1904), 163 Ind. 288, 290, 69 N. E. 546.

But the statute does not provide that issues shall be made up or the cause tried as in civil actions in the preliminary stage of satisfying the court or judge of the regularity of the proceeding and the right of plaintiff to exercise the power of eminent domain for the use sought (§7683 Burns 1926, *supra*). On the contrary, it expressly provides that there shall be no pleadings except the petition and exceptions thereto, which must be filed "not later than the first appearance of such defendant," for the appointment of appraisers immediately "if such objections are overruled," and for an appeal from such order within ten days after their appointment, but that "such appeal shall not stay proceedings in such cause" (§7684 Burns 1926, *supra*). This contemplates a summary proceeding inconsistent with the general provisions of the civil code, to which the provisions authorizing a change of venue from the county do not apply. Appellants did not ask for a change of judge, and no question is before us as to whether or not they could have procured the appointment of a special judge under §443 Burns 1926, §422a Burns 1914 (§1, Acts 1913 p. 314). No error was committed in overruling the motion for a change of venue from the county.

The petitioner (appellee) introduced evidence to the effect that it was incorporated under the laws of the State of Indiana "to own, construct, operate, maintain and lease a waterworks plant and system for the purpose of supplying the city of Bloomington, Monroe county, Indiana, and vicinity, and the inhabitants thereof, with water, and to transact any business incident thereto"; that on petition to the Public Service Commission, in a proceeding to which appellant appeared as a respondent, the commission had made a finding that appellant was a public utility, within the meaning of ch. 98, Acts 1921 p. 216, and that public

convenience, economy and necessity required the appropriation and condemnation of appellant's lands "for the construction and maintenance of a dam and reservoir at said location"; that appellee had a contract agreement with the city of Bloomington, duly ratified by a city ordinance, by which it undertook to construct a dam for impounding water in the valley in which appellants' lands are situated, to construct and fully equip a pumping station in connection therewith, and a pipe line to a designated point in the city of Bloomington, and to furnish and supply to said city a minimum of 650,-000,000 gallons of water per year during a period of twenty-five years, with as many additional gallons as the city may require, up to the capacity of the plant, at a designated price, the water to be delivered in the mains of the water works, operated by the city; and for the purpose of laying and constructing its line to connect with such mains, appellee was granted a franchise to lay pipes in four designated streets in the city for a distance named, "and such other streets and alleys as shall be mutually agreed upon"; that appellee had obtained from the Public Service Commission authority to issue and sell $150,900 of its common capital stock, and $300,000 of its preferred stock, and that the city of Bloomington had subscribed for $150,000 of such common capital stock, to be paid for as soon as the city could issue and sell its bonds for that purpose, and such subscription had been ratified by a city ordinance; that each of the nine directors had subscribed and paid for a share of the stock; that appellee and a firm of contractors had entered into a contract for the construction of a dam, reservoir, pumping station and appurtenances, and pipe lines to the city of Bloomington, and the contractors had executed a bond conditioned for the performance of the contract; and that appellee, in a proceeding resisted by appellants, had obtained from

the board of commissioners of Monroe county, Indiana, a franchise right to lay its mains, conduits and pipes over, across and along the highways between the site of its proposed reservoir and the city of Bloomington; that the officers of appellee company had chosen a site for its dam and reservoir which embraced the lands of appellants sought to be condemned, and had asked appellants to sell it to them for $70 per acre, which they offered to pay for it, but appellants refused unless appellee would buy all of their land and pay them $150 per acre; that appellants had sixty-five acres which appellee did not need; that appellee then offered appellants $17,000 for the land, letting appellants keep the timber, but the offer was refused.

The trial court had the right to infer from this evidence that appellee is incorporated as a water company having the franchise right and charged with the public duty to supply water to the city of Bloomington and its inhabitants, and that it had a franchise from the county and a franchise contract with the city under which it would be bound to and could perform that duty, and that it was actively proceeding with plans and arrangements to construct a' plant for that purpose. This sufficiently established the fact, as found by the court, that appellee had the right to exercise the power of eminent domain for the use intended. §§5573, 5574 Burns 1926, §§5123, 5124 Burns 1914, §§1 and 2, Acts 1889 p. 195, as amended by §1, ch. 123, Acts 1895 p. 243. §§12805, 12806 Burns 1926, §§10052d5, 10052e5 Burns' Supp. 1921, §§1 and 2, Acts 1921 p. 216.

The fact that the plant was not yet built and in operation could not prevent appellee from exercising the right to appropriate lands on which to construct such plant. An express grant of statutory authority to take lands

for that purpose will not be given a construction which would have the practical effect of nullifying the grant. *Pocantico Water Works Co.* v. *Bird* (1891), 130 N. Y. 249, 29 N. E. 246.

4, 5. Evidence tending to show that appellee probably would furnish water to the inhabitants of Bloomington indirectly by selling the water to the city for distribution through the mains and pipes of the municipal water plant, or by leasing its waterworks to the city for use in connection with the municipal water plant, did not prove appellee to be any less a public utility, with the power of eminent domain. There was no evidence which even tended to prove that the dam, reservoir, pumping station, water mains and accessories, for the construction of which appellants' lands were taken, would be used for any other purpose than supplying the city and its inhabitants, and the public of that vicinity, with water, or that they would fail to be used for that purpose. And the mere fact that this might be done indirectly, through lawful contracts with the city, whether by way of lease or otherwise, would not make the use any less a public one. Neither would this court be justified in setting aside the judgment of the circuit court upon the weight of evidence, if any, tending to show that the petitioner really meant to devote the property to a private use, where there was other evidence to which that court obviously gave credit, sufficient to support its decision.

The evidence above set out, if believed and acted on by the trial court, fully justified the decision and order appealed from. And we must presume that any evidence which there may be to the contrary was not given credit by the trial court.

The judgment is affirmed.

## ON PETITION FOR REHEARING.

EWBANK, J.—The facts that the petitioner had incorporated as a water company to own, construct, operate and maintain a plant and system for the purpose of supplying the city of Bloomington and vicinity, and the inhabitants thereof with water, and had obtained and accepted a franchise from the county to dam the creek and to lay its water mains in certain highways for that purpose and a franchise from the city to lay its mains in certain streets, which bound it to furnish the city with 650,000,000 gallons of water per year for twenty-five years, and that these lands were being appropriated for use in accomplishing such purposes, warranted an inference that the proposed taking of property would be for a public use. The charter as a corporation and the county franchise would impose a duty to serve the public outside the city which could be enforced by persons desiring such service; and furnishing water to a city with which to extinguish fires, flush streets and sewers, and accomplish other municipal functions is a public purpose. And the public duty and obligation imposed on the corporation by such a charter and franchise to supply water to the inhabitants of Bloomington for all purposes, including domestic use, were not less binding by reason of the contract entered into with the city to furnish such water indirectly, through the pipes owned by the city, and not to make domestic connections directly with its own mains, nor to use its lines for the company's personal or private gain, in competition with the city plant. So long as the inhabitants of the city shall be given a sufficient supply of water from this reservoir at a price fixed by authority of the state, appellee will not be open to the charge of failing to perform its public duty, even though all such water may reach the ultimate consumer

through pipes owned and operated by the city. But if a supply is not furnished, the contract between appellee and the city would afford no defense to either of them against an action to compel performance of the duty of supplying water to the capacity of the plant which the law imposes on a corporation that has accepted such a charter and procured such franchises as appellee is shown to have.

The petition for a rehearing is overruled.