

I N T H E

# Court of Appeals of Indiana

Metropolitan School District of Southwest Allen County, Indiana,

*Appellant-Plaintiff*

v.

Crown Enterprises,

*Appellee-Defendant*



December 31, 2025

Court of Appeals Case No.
25A-PL-290

Appeal from the Allen Circuit Court

The Honorable Ashley N. Hand, Judge

Trial Court Cause No.
02C01-2406-PL-000278

**Opinion by Judge Felix**
Judge Vaidik concurs in result with separate opinion.
Judge Tavitas dissents with separate opinion.

**Felix, Judge.**

## Statement of Case

The Metropolitan School District of Southwest Allen County, Indiana (the "District") brought a condemnation action against Crown Enterprises ("Crown") to acquire Crown's real estate. Crown filed objections to the District's action, and the trial court sustained those objections. The District now appeals, and the parties raise two issues for our review, one of which is dispositive: Whether the trial court erred by sustaining Crown's objections.

We reverse and remand.

## Facts and Procedural History

Crown owns three parcels of real estate near Winters Road in Allen County, Indiana, (the "Property").[1] The District is a public school corporation. On June 12, 2024, the District filed a complaint for condemnation in which it sought to take the Property "for furtherance of necessary school corporation purposes," including "to construct one or more school buildings and related outdoor structures and improvements on the Property." Appellant's App. Vol. II at 20. The District also alleged that it had "negotiated in good faith in an effort to purchase the Property," "made the required written offer to purchase

---

[1] Parcels 02-16-08-400-002.000-048, 02-16-08-300-007.000-048, and 02-16-08-300-006.000-048.

the Property," and "provided [Crown] with a copy of the appraisals which were used to establish the amount on which the offer was based." *Id.* at 22.

[4] Crown filed an answer and objection to the taking, denying the District's allegation that the taking was necessary and objecting on the basis that the District "has no current need to take Crown's land," Appellant's App. Vol. II at 162. The District filed a motion to overrule Crown's objections, arguing in relevant part that the District is not required to demonstrate a present need for the Property and even if it was so required, it could make that showing.

[5] After a hearing, the trial court sustained Crown's objections. The trial court determined that Crown's objection based on the District's alleged "lack of present need for the taking is a proper objection," Appellant's App. Vol. II at 14, and that Crown's "designated evidence" established that the taking was "not for a present need but to satisfy a remote, speculative need," *id.* at 18. This appeal ensued.

## Discussion and Decision

### The Trial Court Erred by Sustaining Crown's Objections to the Taking

[6] The District challenges the trial court's decision to sustain Crown's present need objection. The decision to overrule or sustain objections to a taking is part of the first of two stages in condemnation proceedings. In particular, such proceedings consist of two distinct phases: (1) "the legislative determination of the necessity of the taking," and (2) "the judicial determination of just compensation for the taking." *Util. Ctr., Inc. v. City of Fort Wayne*, 985 N.E.2d

731, 733 (Ind. 2013) (citing *Bragg v. Weaver*, 251 U.S. 57, 58–59 (1919); *Monongahela Nav. Co. v. U.S.*, 148 U.S. 312, 327 (1893); *State ex rel. Bd. of Aviation Comm'rs of City of Warsaw v. Kosciusko Cnty. Sup. Ct.*, 430 N.E.2d 754, 755 (Ind. 1982)).  "During the initial or summary phase of the proceedings, the action consists solely of legal issues which are decided by the trial court."  *Bd. of Aviation Comm'rs of City of Warsaw*, 430 N.E.2d at 755.  That is, the trial court considers only "the legality of the action and any objections which may have been filed."  *Id.*  The focus of judicial review in the first phase is thus restricted to "whether the condemnation proceedings were legal, whether the [condemnor] had authority to condemn [the] property, and if the property was to be taken for private or public purposes."  *State ex rel. Ind. Dep't of Conservation v. Barber*, 246 Ind. 30, 35–36, 200 N.E.2d 638, 640 (1964) (citing *Cemetery Co. v. Warren Sch. Twp. of Marion Cnty.*, 236 Ind. 171, 188, 139 N.E.2d 538, 546 (1957)), *reh'g denied*.  Accordingly, we review de novo a trial court's decision to sustain or overrule objections to a condemnation action.  *See Thomas v. Foyst*, 260 N.E.3d 887, 893 (Ind. 2025) (citing *In re Ma.H.*, 134 N.E.3d 41, 45 (Ind. 2019)) (holding legal questions are reviewed de novo); *see also Ind. Fam. & Soc. Servs. Admin. v. Meyer*, 927 N.E.2d 367, 370 (Ind. 2010) (citing *Wayne Cnty. Prop. Tax Assessment Bd. of Appeals v. United Ancient Order of Druids-Grove No. 29*, 847 N.E.2d 924, 926 (Ind. 2006)) (holding rulings on paper records are reviewed de novo).

[7]   The Indiana Supreme Court has been clear that courts may not substitute their judgment for that of the condemning authority regarding what is needed to

accomplish that authority's purpose. *See Wampler v. Trs. of Ind. Univ.*, 241 Ind. 449, 454, 172 N.E.2d 67, 70 (1961) (citing *Cemetery Co.*, 236 Ind. at 188, 139 N.E.2d at 546; *Richland Sch. Twp. v. Overmyer*, 164 Ind. 382, 388, 73 N.E. 811, 813 (1905), *disapproved of on other grounds by Cemetery Co.*, 236 Ind. at 189, 139 N.E.2d at 546; *Dahl v. N. Ind. Pub. Serv. Co.*, 239 Ind. 405, 409, 411, 157 N.E.2d 194, 197, 198 (1959), *reh'g denied*; 11 Indiana Law Encyclopedia *Eminent Domain* § 18, at 585; 1 NICHOLS ON EMINENT DOMAIN § 4.11, at 373), *reh'g denied*.[2] "The question of the necessity or expediency of a taking in eminent domain lies within the discretion of the Legislature and is not a proper subject for judicial review." *Id.* Courts nonetheless retain the ability to prevent condemnors from abusing their eminent domain power. For these reasons, in the initial phase of condemnation proceedings, trial courts do not have "the power to inquire into the wisdom or propriety of [a condemnor's necessity] judgment" unless the objecting party demonstrates fraud, bad faith, capriciousness, or illegality in the taking, such "as where an attempt is made to show that the property taken will not be used for a public purpose, or the

---

[2] *See also Lewis v. Bunnell*, 190 Ind. 585, 593, 131 N.E. 386, 389 (1921) (citing *Westport Stone Co. v. Thomas*, 175 Ind. 319, 321, 94 N.E. 406, 408 (1911)); *Henderson v. City of Lexington*, 111 S.W. 318 (Ky. 1908)) ("So long as private property is taken only for public use, and the damage caused by taking it is compensated, the legislature has power to determine, either directly or through agencies chosen by it, when convenience or necessity requires that such property be taken, and what particular property shall be taken."); *cf. Brookston Res., Inc. v. Dep't of Nat. Res.*, 243 N.E.3d 1127, 1139 (Ind. Ct. App. 2024) (quoting *Moriarity v. Ind. Dep't of Nat. Res.*, 113 N.E.3d 614, 619 (Ind. 2019)) ("[Judicial] review of agency action is intentionally limited, as we recognize an agency has expertise in its field and the public relies on its authority to govern in that area."), *trans. denied*, 253 N.E.3d 521 (Ind. 2025); *Ind. Off. of Util. Consumer Couns. v. Duke Energy Ind., LLC*, 248 N.E.3d 1205, 1215–16 (Ind. 2024) (Molter, J., concurring) (explaining that "while we do not defer to the [agency]'s statutory interpretation, we still 'defer[] to agency expertise'" (second alteration in original)).

proceeding is a subterfuge to convey the property to a private use." *Cemetery Co.*, 236 Ind. at 188, 139 N.E.2d at 546 (citing *Farneman v. Mt. Pleasant Cemetery Ass'n*, 135 Ind. 344, 35 N.E. 271 (1893); *Fountain Park Co. v. Hensler*, 199 Ind. 95, 155 N.E. 465 (1927); *Guerrettaz v. Pub. Serv. Co. of Ind., Inc.*, 227 Ind. 556, 87 N.E.2d 721 (1949); *Smith v. State*, 209 Ind. 80, 198 N.E. 69 (1935); *Sexauer v. Star Milling Co.*, 173 Ind. 342, 90 N.E. 474 (1910); *Logan v. Stogsdale*, 123 Ind. 372, 24 N.E. 135 (1890); *Willan v. Hensley Sch. Twp.*, 175 Ind. 486, 93 N.E. 657 (1911), *reh'g denied*; *City of Winchester v. Ring*, 144 N.E. 333 (Ill. 1924); *Hous. Auth. of City of Dallas v. Higginbotham*, 143 S.W.2d 79 (Tex. 1940)); *State v. Collom*, 720 N.E.2d 737, 742 (Ind. Ct. App. 1999) (citing *Dahl*, 239 Ind. at 412, 157 N.E.2d at 198; *Ellis v. Pub. Serv. Co. of Ind., Inc.*, 168 Ind. App. 269, 272, 342 N.E.2d 921, 924 (1976)). Or, as Senior Judge Randall T. Shepard has explained, "[C]ourts may inquire into the necessity of a taking only where the landowner produces evidence of bad faith, fraud, capriciousness, or illegality on the condemnor's part . . . ." *Boyd v. State*, 976 N.E.2d 767, 769 (Ind. Ct. App. 2012) (citing *Collom*, 720 N.E.2d 737 (Ind. Ct. App. 1999)).

[8] In *Cemetery Co. v. Warren School Township of Marion County*, the Indiana Supreme Court applied this principle to schools. 236 Ind. at 188, 139 N.E.2d at 546. There, the landowner objected to a school's complaint to condemn property based in part on the reasonableness and necessity of the taking for school purposes; in particular, the landowner alleged "that there is other vacant property adjacent to the school property" that "is suitable for the purpose." 236

Ind. at 188, 139 N.E.2d at 546. In concluding that courts cannot make such inquiries, the Indiana Supreme Court held as follows:

> The courts have the right to determine the *legal authority and right* under which the power of eminent domain is exercised. This does not mean, however, that the courts may assume the administrative act of determining the *necessity or reasonableness* of the decision to appropriate and take the land. To us, this appears to be a matter for the determination of the legislature or the corporate body to whom the legislature has delegated such a decision.

236 Ind. at 188, 139 N.E.2d at 546 (emphases in original); *see also Boyd*, 976 N.E.2d at 770–71 (citing *Wampler*, 241 Ind. at 455, 172 N.E.2d at 70) (whether the State needs a certain amount of land for a road project "is not a proper subject for judicial review"); *Knott v. State*, 973 N.E.2d 1259, 1264 (Ind. Ct. App. 2012) (citing *Indianapolis Power & Light Co. v. Barnard*, 175 Ind. App. 308, 312, 371 N.E.2d 408, 411 (1978)) ("INDOT's judgment as to necessity of appropriating this land for the I-69 Project cannot be questioned or superseded by the judgment of this court."), *trans. denied*.

[9] Only in cases involving public utilities has the Indiana Supreme Court allowed some inquiry into the necessity of the decision to take property for reasons other than fraud, bad faith, or capriciousness. *See Country Ests., Inc. v. N. Ind. Pub. Serv. Co.*, 254 Ind. 108, 258 N.E.2d 54 (1970); *Meyer v. N. Ind. Pub. Serv. Co.*, 254 Ind. 112, 258 N.E.2d 57 (1970); *Ind. & Mich. Elec. Co. v. Schnuck*, 260 Ind. 632, 298 N.E.2d 436 (1973); *see also Ellis*, 168 Ind. App. 269, 342 N.E.2d 921. In particular, when a public utility is the condemnor, the Indiana Supreme Court

allows the landowner to establish lack of necessity based on "whether or not the [public utility] ha[s] an immediate need or a fair and reasonable future need for the property in question." *Schnuck*, 260 Ind. at 634, 298 N.E.2d at 438 (citing *Country Ests.*, 254 Ind. 108, 258 N.E.2d 54; *Meyer*, 254 Ind. 112, 258 N.E.2d 57).

[10] The Indiana Supreme Court has not expanded the "present need" requirement to apply to condemning entities other than public utilities.[3] *See Boyd*, 976 N.E.2d at 771 (declining to extend present need requirement to taking by department of transportation). To the extent certain decisions of this court can be read to have applied the "present need" requirement to schools, those cases

---

[3] Furthermore, the statute authorizing a school to condemn real estate specifically calls for the school's "governing body" to "consider[]" whether the taking is "necessary for school purposes":

> (a) In carrying out the school purposes of a school corporation, the governing body acting on the school corporation's behalf has the following specific powers:
>
> * * *
>
> (4) To do the following:
>
>> (A) Acquire . . . real estate . . . or an interest in real estate . . . *as the governing body considers necessary for school purposes* . . . by eminent domain.

Ind. Code § 20-26-5-4(a)(4)(A) (emphasis added); *cf. id.* § 32-24-3-1 (allowing the attorney general to file a condemnation action in the name of the state "[i]f the governor considers it necessary"). By contrast, the statute authorizing a public utility to condemn real estate mandates that the taking be "necessary for the carrying out of [the public utility's] objects," but it does not require a governing body or elected official to make a necessity determination:

> A public utility, except in cities of the third class, engaged in the production, transmission, delivery, or furnishing of heat, light, water, or power or for the collection, treatment, purification, and disposal in a sanitary manner of liquid and solid sewage or furnishing facilities for transmission of intelligence by electricity to towns and cities and to the public in general or for the furnishing of elevator or warehouse service, either directly or indirectly, to or for the public, for the purpose of enabling it to perform its functions, may appropriate and condemn lands of individuals and private corporations, or any easement in any lands, *necessary to the carrying out of its objects* . . . .

*Id.* § 8-1-8-1(a) (emphasis added).

are distinguishable because they did not deal with a challenge to the applicability of the present need requirement; rather, the parties disputed whether the landowners had met their burden of establishing the schools lacked a present need or a fair and reasonable future need for the properties. *See Krause-Franzen Farms, Inc. v. Tippecanoe Sch. Corp.*, 173 N.E.3d 694 (Ind. Ct. App. 2021); *Rudolph Farm, Inc. v. Greater Jasper Consol. Schools*, 537 N.E.2d 1199 (Ind. Ct. App. 1989). For instance, in *Rudolph Farm, Inc. v. Greater Jasper Consolidated Schools*, this court recognized that authority to determine necessity rests with the legislature (or the governing body). However, after a careful review of the opinion, it appears that the *Rudolph* court reviewed the necessity of the taking because the need was patently obvious; in other words, the *Rudolph* court discussed the necessity of the taking not because it was required to do so but because the need for the taking was so clear. *See* 537 N.E.2d at 1201–02. Just because the panel in *Rudolph* chose to point out the obvious does not mean that they needed to do so.

[11] Even if Crown could have objected to the necessity of the taking based on an alleged lack of present need, Crown failed to meet its burden of showing that the District did, in fact, not have a present need for the Property. As the objecting party, Crown had the burden of establishing that the taking was not necessary for the purpose sought.[4] *See Michael v. City of Bloomington, Ind. Bd. of*

---

[4] Crown did not allege or argue bad faith, fraud, capriciousness, or illegality on the District's part; instead, Crown focused solely on the District's alleged lack of present need.

*Pub. Works*, 804 N.E.2d 1225 (Ind. Ct. App. 2004) (citing *Collom*, 720 N.E.2d at 742) ("The burden is on the party objecting to the taking to establish that the taking is not necessary."); *Collom*, 720 N.E.2d at 742 (citing *Dahl*, 239 Ind. at 412, 157 N.E.2d at 198; *Ellis*, 168 Ind. App. at 272, 342 N.E.2d at 924) ("[T]he burden is placed on the party objecting to the appropriation of real estate . . . to establish that the taking is not necessary . . . .").

[12]   In support of its objection, Crown alleged in relevant part that the District did not have "any *current* plans to construct a school"; had not "taken any steps such as having architectural plans or drawings in place for a proposed school"; had "acknowledge[d] it is asking to take [the Property] to have in 'in place' for some future use"; had not "identif[ied] what type of school facilities (or how many) it may need to build at some unidentified time in the future"; had stated that it "is unaware of the date on which the school facility or facilities will be operational, given that the land upon which they will be constructed has not yet been acquired". Appellant's App. Vol. II at 164. However, even according to the documents Crown attached to its objection, the District needs the Property

> in order to have land in place upon which to construct one or more school facilities to accommodate growing student enrollment within [the District]'s district, in light of multiple existing school facilities already at or above capacity, anticipated enrollment growth over the next decade, and increased residential and commercial development within the district attracting families with school-age children.

*Id.* at 169. To that end, the District had (1) "commissioned a demographic report by Jerome McKibben identifying enrollment growth within the district over the subsequent decade," *id.* at 170; (2) "conducted a listening tour of elementary and middle schools within the district, resulting in feedback that existing facilities are inadequate to accommodate growing enrollment," *id.*; (3) "monitored new planned residential and commercial developments within the district that are expected to attract increased student enrollment," *id.*; (4) "considered multiple alternative sites for a new elementary or middle school, and contacted and negotiated with the landowners or their representatives," *id.* at 171; (5) "estimated space and budgetary needs attributable to a new elementary or middle school, in addition to alternatives of merely expanding additional facilities," *id.*; and (6) "initiated these eminent domain proceedings with respect to [Crown]'s real estate," *id.* The attachments also establish that eight of the District's nine schools are in Aboite Township; the ninth school is in Lafayette Township; the District "ha[s] had significant issues obtaining property in Aboite Township, and recently Lafayette Township," *id.* at 178; and as of March 2024, the District "ha[d] nowhere left in Aboite to build," *id.*

[13] Crown's allegations present the classic chicken-and-egg problem—the District does not yet have a definitive plan for the Property because it does not yet own the Property. The Indiana Supreme Court faced a similar situation in *Matlock v. Bloomington Water Co.*, 196 Ind. 271, 146 N.E. 852 (1925), *reh'g denied*. A water company sought to condemn land "for the alleged purpose of building thereon a dam, a basin in which to impound water, a power plant, and certain pipe lines

and water mains, and obtaining therefrom materials for the construction of its purposed waterworks." 196 Ind. at 273, 146 N.E. at 853. The Indiana Supreme Court determined that "[t]he fact that the plant was not yet built and in operation could not prevent [the water company] from exercising the right to appropriate lands on which to construct such plant," 196 Ind. at 278, 146 N.E. at 855, because "[a]n express grant of statutory authority to take lands for that purpose will not be given a construction which would have the practical effect of nullifying the grant," 196 Ind. at 278–79, 146 N.E. at 855 (citing *Pocantico Water-Works Co. v. Bird*, 29 N.E. 246 (N.Y. 1891)). The logic of *Matlock* applies equally to the District's requested condemnation of the Property.

[14] Nevertheless, Crown points to its allegations and supporting documentation regarding statements made by the District's superintendent. A local news outlet reported that the District's superintendent "said in an interview . . . that the [D]istrict has no immediate plans for a new school," Appellant's App. Vol. II at 177; and in an email about that news article, the superintendent told staff that the District was "working to secure ground well in advance of potential needs in Lafayette Township," *id.* at 178. Regardless of the superintendent's comments, Crown's evidence demonstrates that the District has at least a fair and reasonable future need for the Property, which is enough to pass muster under our Supreme Court's "present need" precedent. *See Schnuck*, 260 Ind. at 635, 298 N.E.2d at 438 (explaining present need requirement as one of "immediate need" or "a fair and reasonable future need"). Accordingly, assuming arguendo that Crown could properly object to the taking as lacking

present need, the trial court erred by determining Crown had met its burden thereon.

[15] Based on the foregoing, the trial court erred by sustaining Crown's present need objection.[5] We therefore reverse and remand with instructions for the trial court to enter an order (1) granting the District's motion to overrule and (2) overruling Crown's objections.

[16] Reversed and remanded.

Vaidik, J., concurs in result with separate opinion.

Tavitas, J., dissents with separate opinion.

ATTORNEYS FOR APPELLANT

Bart A. Karwath
Mark J. Crandley
Barnes & Thornburg LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

---

[5] Because Crown failed to carry its burden of establishing that the taking is not necessary based on a lack of present need, we need not reach the question of whether the trial court erred by considering the evidence presented in the District's motion to overrule. However, we reiterate that the objecting party bears the burden of establishing lack of necessity, *State v. Collom*, 720 N.E.2d 737, 742 (Ind. Ct. App. 1999) (citing *Dahl v. N. Ind. Pub. Serv. Co.*, 239 Ind. 405, 412, 157 N.E.2d 194, 198 (1959), *reh'g denied*; *Ellis v. Pub. Serv. Co. of Ind., Inc.*, 168 Ind. App. 269, 272, 342 N.E.2d 921, 924 (1976)), and we do not require the condemnor to plead with specificity the reasons underlying its necessity determination, *id.* (quoting 11A Indiana Law Encyclopedia *Eminent Domain* § 99 n.91, at 351 (1998)). We also observe that this court has recently held that "the eminent domain statutes do not contemplate evidentiary proceedings beyond the filing of the complaint and objections" during the first stage of condemnation proceedings. *Bender Enters., LLC v. Duke Energy, LLC*, 201 N.E.3d 206, 208–09 (Ind. Ct. App. 2022).

William A. Ramsey
Barrett McNagny LLP
Fort Wayne, Indiana

**Vaidik, Judge, concurring in result.**

[17]     I disagree with Judge Felix's conclusion that *Country Estates* and *Meyer* only apply to public-utility cases. Instead, I believe that trial courts can inquire whether a condemnor has a present need or a fair and reasonable future need for a property. Indeed, in *Krause-Franzen Farms*, which has similar facts, this Court reviewed whether a school district had a present need to condemn a property (and held that it did). That said, I agree with Judge Felix's alternate conclusion that Crown, as the objecting party, has failed to prove that the school district doesn't have a present need or a fair and reasonable future need for the property. I therefore concur in the result reached by Judge Felix.

**Tavitas, Judge, dissenting.**

I respectfully dissent from the majority's opinion reversing the trial court's denial of the District's condemnation petition. I conclude that, under the current precedent of our Supreme Court, the trial court was permitted to consider the District's necessity for the condemnation as part of our duty to review the capriciousness of a condemnation. Further, I agree with the trial court that Crown met its burden of demonstrating that the District did not have a present need for the property. Accordingly, I conclude that the condemnation was not necessary as required by statute and, thus, was capricious, and I would affirm the trial court's judgment.

## I. The condemnation statutes and caselaw need clarification.

Our review of this matter has demonstrated that confusion regarding condemnation procedures abounds. Even a matter as basic as how the trial court and this Court are to review a condemnation decision has resulted in multiple, conflicting interpretations.

As the majority notes, our Courts have held that the initial phase of condemnation proceedings "consists solely of legal issues which are decided by the trial court." *Coutar Remainder I, LLC v. State*, 91 N.E.3d 610, 614 (Ind. Ct. App. 2017), *trans. denied*. In this initial phase, we consider "whether the condemnation proceedings were legal, whether the condemning [entity] had authority to condemn the property in question, and whether the property was to be taken for a public purpose." *Bender Enters., LLC v. Duke Energy, LLC*, 201

N.E.3d 206, 208-09 (Ind. Ct. App. 2022). These determinations clearly require an evidentiary basis.

[21] Although the initial phase consists solely of legal issues, Indiana Code Section 32-24-1-6 requires a notice to defendants directing "the defendants to **appear before the court** on the day to be fixed by the plaintiff by indorsement on the complaint at the time of filing the complaint, and to show cause, if any, why the property sought to be condemned should not be acquired." (emphasis added). The statutes do not clarify whether this hearing should be an evidentiary hearing.

[22] In *Krause-Franzen Farms, Inc. v. Tippecanoe School Corp.*, 173 N.E.3d 694, 696 (Ind. Ct. App. 2021), the trial court held an evidentiary hearing, and testimony was presented. *See also State v. Collom*, 720 N.E.2d 737, 739 (Ind. Ct. App. 1999), *trans. denied*. In *Bender Enterprises*, however, we held that, "[s]ince the eminent domain statutes do not contemplate evidentiary proceedings beyond the filing of the complaint and objections in the first stage, clearly those pleadings must articulate all the facts necessary for the fact-finder to rule on the legality of the action before proceeding to the second stage." *Bender Enters.*, 201 N.E.3d at 210. Here, the trial court held a hearing regarding Crown's objections, but no evidence was presented.[6]

---

[6] In the second stage of eminent domain proceedings, the statutes clearly allow an evidentiary hearing. Indiana Code Section 32-24-1-11(c) provides: "The cause shall further proceed to issue, trial, and judgment as in civil actions."

[23] The trial court here made its determination based upon the complaint, Crown's objections, and the District's motion to overrule, which raises another point of confusion. Indiana Code Section 32-24-1-8(c) provides: "The court may not allow pleadings in the cause other than the complaint, any objections, and the written exceptions provided for in section 11 of this chapter. However, the court may permit amendments to the pleadings." We held in *Bender Enterprises* that the complaint and objections "must articulate all the facts necessary for the fact-finder to rule on the legality of the action[.]" *Bender Enters.*, 201 N.E.3d at 210.

[24] In its motion to overrule, the District provided additional evidence to support its condemnation complaint, but on cross-appeal, Crown argues that the trial court erred by considering the District's motion to overrule Crown's objections. *Bender Enterprises* would seem to bar the trial court from considering the District's motion to overrule and accompanying evidentiary assertions. But the District points out that the condemnor is not required to address the necessity of a taking in the complaint, leaving a motion to overrule as the condemnor's only opportunity to address the property owner's objections. Given these points of confusion, I conclude that Hoosiers could benefit from updated statutory language regarding condemnations and clarification of judicial review procedures in condemnation matters.

## II. The necessity requirement is reviewable and is not limited to public utilities.

[25] Despite our duties of judicial review in this initial phase, the majority concludes that necessity is solely a legislative determination, and the trial court was not permitted to inquire into the District's necessity for condemnation except in cases of public utilities, bad faith, fraud, capriciousness, or illegality by the condemnor. I do not, however, find the majority's argument persuasive. Black's Law Dictionary defines "capricious" as "contrary to the evidence or established rules of law."[7] *Capricious*, Black's Law Dictionary (10th ed. 2014). Although not argued by the parties here, I would consider a condemnation to be capricious when it is not supported by necessity or a present need. Accordingly, I conclude that judicial review of necessity is performed as part of our duty to review capriciousness.

[26] Although our Supreme Court has stated that the necessity of a taking is a "legislative determination," *Utility Center, Inc. v. City of Fort Wayne*, 985 N.E.2d 731, 733 (Ind. 2013), the Court engaged in a detailed analysis of necessity in condemnation actions in *Meyer v. Northern Indiana Public Service Co.*, 258 N.E.2d

---

[7] Capricious is typically defined as part of "arbitrary and capricious," which our Courts have defined as:

> [A] decision is arbitrary and capricious if it is made without any consideration of the facts and lacks any basis that might lead a reasonable person to make the same decision as the administrative agency. A decision may also be arbitrary and capricious where only speculation furnishes the basis for a decision. In other words, an agency decision is arbitrary and capricious where there is no reasonable basis for the decision.

*Melton v. Indiana Athletic Trainers Bd.*, 156 N.E.3d 633, 665 (Ind. Ct. App. 2020) (internal citations and quotations omitted), *trans. denied*.

57, 58-59 (Ind. 1970), and *Country Estates, Inc. v. Northern Indiana Public Service Co.*, 258 N.E.2d 54, 56 (Ind. 1970). In both cases, a utility sought condemnation for a 200-foot-wide easement. 150 feet of the easement were needed to construct a transmission line, and the utility sought the remaining easement for future transmission lines that had not yet been planned.

In *Meyer*, our Supreme Court held that "[e]minent domain is limited by the necessity of the take and the condemning authority may condemn only for future use which is fairly and reasonably needed." 258 N.E.2d at 58 (citing *Kessler v. Indianapolis*, 157 N.E. 547 (Ind. 1927)). The Court noted: "The speculation by [the utility's] engineer that sometime in the future, maybe as much as six or ten years in the future, there will possibly be a necessity for an additional line does not justify imposing the additional 50 foot easement upon the properties of the appellants. To do so would be to permit the appellee to maintain an action of condemnation for a purely speculative future need." *Id.* at 58-59. The Court phrased the issue as "not a question of a degree of necessity to accomplish the purposes of the appellee in providing for its immediate needs and needs in the reasonably foreseeable future, but this is a question of whether there is any necessity what[so]ever to justify the taking of the additional 50 feet . . . ." *Id.* at 59. The Court held that there was no "necessity" and that "the taking in this case insofar as it exceeds 150 feet is unauthorized and is, therefore, unlawful." *Id.*

Similarly, in *Country Estates*, our Supreme Court held that it was clear:

the necessity for the appellee's taking of the easement is confined to a 150 foot right-of-way. . . . To the extent that they are seeking also to take an additional 50 feet for the contingent possibility of having to at some future time construct an additional [ ] line, they are exceeding their eminent domain authority. **The legislature has granted this authority, but has limited it to the taking of property which is necessary in the operation of the business of the condemnor**, and it is the manifest legislative intent * * * to prevent the abuse of the power by making appropriations for **speculative**, monopolistic, or other purposes, foreign to the legitimate objects contemplated by the corporation's charter.

258 N.E.2d at 56 (emphasis added) (quotations omitted).

[29] Thus, in both *Country Estates* and *Meyer*, the Court reviewed whether the condemnor exceeded its statutory authority by condemning property unnecessarily. *See also Ind. & Mich. Elec. Co. v. Schnuck*, 298 N.E.2d 436, 440 (Ind. 1973) (relying on *Country Estates* and *Meyer* and holding that the "power company ha[d] no present immediate need, nor any fair and reasonable future need for the real estate sought to be acquired"). The majority contends that the holdings of *Country Estates* and *Meyer* are limited to cases involving public utilities. Neither *Country Estates* nor *Meyer*, however, specifically limited this showing of necessity to cases involving public utilities.

[30] Following *Country Estates* and *Meyer*, this Court has split on the circumstances in which a court can review the necessity of a condemnation. In one line of cases, this Court has limited the application of *Country Estates* and *Meyer* and held that, except in the case of a public utility, "courts may inquire into the

necessity of a taking only where the landowner produces evidence of bad faith, fraud, capriciousness, or illegality on the condemnor's part." *Boyd v. State*, 976 N.E.2d 767, 769 (Ind. Ct. App. 2012) (quoting *Collom*, 720 N.E.2d 737; *see also Michael v. City of Bloomington, Ind. Bd. of Pub. Works*, 804 N.E.2d 1225 (Ind. Ct. App. 2004)).

[31]     On the other hand, in several cases, this Court has reviewed the necessity of a condemnation in non-public utility matters. In both *Rudolph Farm, Inc., v. Greater Jasper Consolidated Schools*, 537 N.E.2d 1199 (Ind. Ct. App. 1989), and *Krause-Franzen Farms*, 173 N.E.3d 694, this Court reviewed the necessity of a condemnation and whether the school corporations at issue demonstrated a present need to condemn the properties. In both cases, this Court relied upon the analysis of *Country Estates* and *Meyer*.

[32]     The majority argues that the necessity requirement applies only to public utilities due to the different statutory authorization applicable to public utilities. The legislature has delegated the State's eminent domain authority to other entities. *Bender Enters.*, 201 N.E.3d at 208 (citing *Util. Ctr., Inc.*, 985 N.E.2d at 733). Our Supreme Court has held that, "because statutes of eminent domain are 'in derogation of the common law rights to property [they] must be strictly construed, both as to the extent of the power and as to the manner of its exercise.'" *Util. Ctr., Inc.*, 985 N.E.2d at 735 (quoting *Cemetery Co. v. Warren Sch. Twp.*, 139 N.E.2d 538, 544 (Ind. 1957)).

The General Assembly has given school boards the power of eminent domain pursuant to Indiana Code Section 20-26-5-4(a), which provides:

> In carrying out the school purposes of a school corporation, the governing body acting on the school corporation's behalf has the following specific powers: . . . (4) To do the following: (A) Acquire . . . real estate . . . as the governing body considers **necessary for school purposes**, . . . by eminent domain . . . ."

(emphasis added). Similarly, Indiana Code Section 8-1-8-1(a) provides that "[a] public utility . . . for the purpose of enabling it to perform its functions, may appropriate and condemn lands . . . **necessary to the carrying out of its objects** . . . ." (emphasis added). The majority contends that the statutes require different results because the school corporation statute requires a governing body or elected official to make the necessity determination. I see this as a distinction without a difference.

Under either statute, necessity is required, and there is no statutory difference in reviewability of this requirement by the courts. "[T]he inviolability of private property has been a central tenet of American life since before this country's founding." *Util. Ctr., Inc.*, 985 N.E.2d at 735. A property owner's rights are no different whether the condemnor is a school corporation or a public utility. A speculative taking results in the same harm to property owners regardless of whether a public utility or other governmental entity is involved.

Both *Country Estates* and *Meyer* and the relevant statutes require necessity for a condemnation. Neither *Country Estates* nor *Meyer* specifically limited the

applicability of this requirement to public utility condemnations. We are "bound by our supreme court's decisions, and its precedent is binding on us until it is changed by our supreme court or legislative enactment."[8] *Brookston Res., Inc. v. Dep't of Nat. Res.*, 243 N.E.3d 1127, 1138 (Ind. Ct. App. 2024), *trans. denied*. Accordingly, unless otherwise directed by our Supreme Court, I conclude that evidence of necessity/present need was required. I would review the necessity of a condemnation as part of our duty to review the condemnor's statutory authority and capriciousness of the condemnation. I conclude that a condemnation without a present need is not necessary and, thus, is outside the condemnor's statutory authority and capricious.

## II. Crown demonstrated that the District lacked necessity.

[36]     I also disagree with the majority's determination that the District had a necessity for the property. Crown had the burden to establish in its objections that "the taking [was] not necessary for the purpose sought." *Collom*, 720 N.E.2d at 742. Considering only the complaint and objections, I agree with the trial court that Crown met its burden of establishing that the District did not have a present need for the property.

[37]     We analyzed a similar issue in *Krause-Franzen Farms*, where the evidence showed that the school was "currently faced with capacity conditions, security

---

[8] In fact, our Supreme Court in *Howard v. United States*, 964 N.E.2d 779, 782 (Ind. 2012), which was not a utility case, cited *Meyer* favorably for the proposition that "[e]minent domain is limited by the necessity of the take and the condemning authority may condemn only for future use which is fairly and reasonably needed."

concerns, transportation issues and aging instructional facilities." 173 N.E.3d at 699-700. A study recommended that the school district relocate a middle school to a new facility and renovate an existing elementary school; the school had engaged an architect and was ready to move forward with the plans. The school district had an anticipated start date and a plan for funding the construction. We concluded in *Krause-Franzen Farms* that the school district demonstrated a present need for the property. *Id*. at 700.

[38] Similarly, in *Rudolph Farm*, the school district was "faced with overcrowded conditions, safety concerns, transportation problems and obsolete facilities." 537 N.E.2d at 1202. Further, statistics demonstrated that enrollment was increasing each year. The school district proposed a specific plan to renovate and expand an elementary school, add a bus turnaround and parking facility, and update the sanitary sewer system. We concluded that the school district was "not appropriating property because it might, someday, want to put something there." *Id.* at 1202. The condemnation would "accomplish its immediate purposes, not some future, speculative need." *Id.*

[39] Here, in its condemnation complaint, the District alleged that it needed "to obtain the Property for furtherance of necessary school corporation purposes" and that it intended "to construct **one or more** school buildings and related outdoor structures and improvements on the Property." Appellant's App. Vol. II p. 20 (emphasis added). This lack of specificity clearly indicates that the District has no idea of how much land is necessary. In response, Crown filed

its objections with exhibits and argued that the District did not have a "current need to take Crown's land." *Id.* at 162. Crown's objections stated:

> 5. Here, there is no evidence that [the District] has any current plans to construct a school on Crown's land or has taken any steps such as having architectural plans or drawings in place for a proposed school on Crown's land.
>
> 6. [The District] claims that it needs Crown's land as follows:
>
>> [The District] states that condemnation of [Crown's] real estate is needed *in order to have land in place* upon which to construct one or more school facilities to accommodate growing student enrollment within [the District's] district, in light of multiple existing school facilities already at or above capacity, anticipated enrollment growth over the next decade, and increased residential and commercial development within the district attracting families with school-age children.
>
> (Exhibit A: Answer to [Crown's] First Set of Interrogatories, Interrogatory 1, emphasis added.)
>
> 7. Thus, [the District] acknowledges it is asking to take Crown's land to have it "in place" for some future use and cannot identify what type of school facilities (or how many) it may need to build at some unidentified time in the future.
>
> 8. Further, [the District] admits that it has no anticipated start date, stating it "is unaware of the date on which the school facility or facilities will be operational, given that the land upon which they will be constructed has not yet been acquired." (Exhibit A: Answer to [Crown's] First Set of Interrogatories, Interrogatory 6.)

9. [The District's] former Superintendent gave an interview to a local newspaper reporter, who stated that the former Superintendent said in the interview "that the district has *no immediate plans* for a new school, but that the 89.46-acre site would be fantastic for a future elementary or middle school." (Exhibit B: Southwest Allen County Schools eyes land in Lafayette Township, Ashley Sloboda, The Journal Gazette, May 8, 2024, *available* at https://www.journalgazette.net/local/schools/southwest-allen-county-schools-eyes-land-inlafayette-township/article_99896f00-0d83-11ef-ab17-4bdda4d1df46.html (emphasis added)).

10. [The District's] former Superintendent further confirmed that there are no immediate plans for the Property in an email dated March 26, 2024, in which he stated that "we are working on our own now and working to secure ground *well in advance of potential needs* in Lafayette Township." (Exhibit C: SACS_00001933.) In other words, not only is [the District] taking the Property for a "potential need" (and not a present or immediate need) but doing so *in advance* of a potential need.

11. [ ] [T]he resolution itself identifies no immediate or present need for the land, and confirms that the future use is speculative, as the resolution does not even identify the number of structures, the type of structures, or what type of school (or schools) would be located on the Property.

\* \* \* \* \*

13. Based on these facts, [the District] cannot show a present, current, or immediate need to take Crown's land.

Appellant's App. Vol. II pp. 164-66 (footnotes omitted) (emphasis in original).

[40]     Based on this evidence, the trial court found:

> Other than the demographic study showing projected growth in the school district and the subjective parent concerns regarding classroom size elicited in April 2022, the Court has not been presented with evidence showing that [the District] is faced with overcrowded conditions, safety concerns, transportation problems, or obsolete facilities. Accordingly, the Court finds that [the District] has not refuted [Crown's] objection based on it not having a present need to appropriate the Property. The Court finds that [the District's] intentions for appropriating the Property are remote and speculative, including its uncertainty regarding what school facilities it intends to construct on the Property and regarding an estimated timeline in which construction is anticipated to begin on the Property. . . .
>
> [ ] Based on the uncertainty surrounding [the District's] intended use of the Property, it is difficult for the Court to differentiate any present need the School Corporation may have for the Property from its apparent speculative, future need for the Property.

*Id.* at 18.

[41]     I agree with the trial court that the evidence demonstrated only a speculative, future need for the property. Although the District was not required to have detailed plans, the District here did not even know if it would build an elementary school or a middle school; did not have a tentative timeline for construction to begin; did not have a financing plan ready; was unable to identify even tentative specifications for the project; and had no idea of how much land was needed. Under these circumstances, I conclude that Crown submitted evidence showing only a speculative, future need for the property.

Accordingly, I would affirm the trial court's judgment, and I dissent from the majority's opinion concluding otherwise.